## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CORI ANN GINSBERG on behalf of herself and all others similarly situated, ) | Civil Action No.: |
| ) | |
| ) | **CLASS ACTION COMPLAINT** |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| AZORIO, LLC, ) | **JURY TRIAL DEMANDED** |
| ) | |
| Defendant. ) | |
| ) | |

Plaintiff, Cori Ann Ginsberg, ("Plaintiff" or "Ginsberg"), on behalf of herself and all others similarly situated, through her undersigned counsel, alleges against Defendant, Azorio, LLC ("Defendant" or "Azorio"), the following upon personal knowledge as to her own acts, and based on the investigation conducted by her counsel, as to all other allegations:

### SUMMARY OF THE ACTION

1.     Plaintiff brings this class action on behalf of herself and all other persons who were damaged by Azorio's sale and deceptive labeling of their S-adenosylmethionine ("s-adenosyl-methionine" or "SAMe," "SAM-e," "SAME," "sam-e," "same," or "samee") dietary supplement capsules (the "product" or the "subject product") which are fraudulently labeled.

2.     Azorio provides the subject product for sale to consumers under its own private label brand names online, through various seller accounts on Amazon.com. Azorio's private label brands include: Naturetition Supplements ("Naturetition")[1], PureControl Supplements

---

[1] *See* https://www.amazon.com/SAM-1500mg-180-Capsules-Naturetition/dp/B01AFGG7O6/ref=sr_1_8?dchild=1&keywords=naturetition+sam-e&qid=1588033887&s=hpc&sr=1-8 and https://www.amazon.com/SAM-1500mg-Capsules-

("PureControl")[2], and Earth Natural Supplements ("Earth Natural")[3]. Azorio's seller accounts on Amazon.com include: Earth Natural Supplements (Seller ID: ANAL58EVMKY7H) and GOLDANDSTONES – SUPPLEMENTS (Seller ID: A2QZY8BV8FU3RW). The subject product is packaged in plastic bottles, with 90 or 180 capsules filling each bottle, and sealed with plastic bottle caps. The subject product is fraudulently labeled representing to consumers that the SAMe product contains 1500 milligrams ("mg") of SAMe per serving, when, in reality, the product contains less than 25% of that claimed amount of active SAMe. The subject product labels' false claims concerning the amount of SAMe included in their capsule pills mislead consumers into purchasing their SAMe dietary supplement capsules under false pretenses. The product's misleading labeling may also lead to significant injury or health concerns to unknowing purchasers who rely on the accuracy of the advertised amount of SAMe to make informed purchasing decisions and consume a proper dosage of the dietary supplements.

3.      Because of Azorio's scientific knowledge of the SAMe molecule, its biological functions, and its tosylate disulfate salt form; knowledge regarding the consumer dietary supplement industry; knowledge regarding the manufacturing and packaging of the specific subject product; its laboratory testing, capsule weight, and online complaints and feedback; Azorio

---

Naturetition-
Supplements/dp/B01AFGG66U/ref=sr_1_7?dchild=1&keywords=naturetition+sam-
e+90+capsules&qid=1589576229&sr=8-7.

[2] *See* https://www.amazon.com/SAM-1500mg-Capsules-PureControl-
Supplements/dp/B017VEG9FM/ref=sr_1_24?dchild=1&keywords=purecontrol&qid=15880348
35&sr=8-24.

[3] *See* https://www.amazon.com/SAM-1500mg-Caps-Natural-
EarhNaturalSupplements/dp/B0143AOLO8/ref=sr_1_6?dchild=1&keywords=earth+natural+sup
plements+SAM-e&qid=1588034487&sr=8-6.

has been on notice, or should have reasonably been on notice, that the subject product was falsely labeled to the consumer public and not fit for its intended dietary supplement purpose and claimed SAMe supplementation. At the time of Plaintiff's order and purchase, Azorio has and continues to actively misrepresent the amount of active SAMe contained in the product's capsules thereby causing Plaintiff and putative class members economic injury.

4.      Plaintiff alleges that Defendant Azorio is liable to Plaintiff and putative class members for the cost of purchase of the subject product under their respective false labels and other damages under the law.

## PARTIES

5.      Plaintiff Cori Ann Ginsberg brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Ginsberg is an adult individual who at all relevant times has resided in North Miami, Florida, in the Southern District of Florida. On or about November 1, 2016, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of Naturetition Supplements and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $21.99.[4] On or about October 11, 2017, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of Naturetition Supplements and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.[5] On or about January 30, 2018, Plaintiff

---

[4] The purchased product from Naturetition Supplements was listed on Amazon.com as SAM-e 1500mg ~ 90 Capsules - No Additives ~ Naturetition Supplements with an ASIN # of B01AFGG66U. *See* Exhibit A.

[5] The purchased product from Naturetition Supplements was listed on Amazon.com as SAM-e 1500mg ~ 90 Capsules - No Additives ~ Naturetition Supplements with an ASIN # of

Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of Naturetition Supplements and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.[6] On or about May 21, 2018, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of Naturetition Supplements and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.[7] The products were all shipped to her residence in North Miami, Florida. Plaintiff Ginsberg intends to continue to shop on online, the Amazon website, and various pharmacies and outlets, including for purposes of purchasing SAMe dietary supplements, and may in the present or future, as a reasonable consumer acting reasonably under the circumstances, knowingly or unknowingly, purchase the false and deceptively labeled subject product as it is sold under one of a number of private label brand names.

6.     Defendant Azorio, LLC is an independent company which sells vitamins and nutritional supplements on Amazon.com, including the subject product SAMe, under various private label brand names, including Naturetition Supplements, PureControl Supplements, and Earth Natural Supplements. Azorio maintains a principal place of business at 333 Kendall Drive, Marco Island, Florida 34145.

---

B01AFGG66U. *See* Exhibit A.

[6] The purchased product from Naturetition Supplements was listed on Amazon.com as SAM-e 1500mg ~ 90 Capsules - No Additives ~ Naturetition Supplements with an ASIN # of B01AFGG66U. *See* Exhibit A.

[7] The purchased product from Naturetition Supplements was listed on Amazon.com as SAM-e 1500mg ~ 90 Capsules - No Additives ~ Naturetition Supplements with an ASIN # of B01AFGG66U. *See* Exhibit A.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and the number of putative class members are at least one hundred (100). This is a class action in which some of the class members are citizens of states different from Defendant.

8.      This Court has personal jurisdiction over Defendant in that Defendant is located and incorporated in the State of Florida; engages in business and actively places and/or facilitates the placement of products, including the subject product, into a stream of commerce in the State of Florida, including within the boundaries of this judicial district, and has sufficient minimum contacts in Florida; and otherwise intentionally avails itself of the markets within Florida through promotion, sale, marketing and/or distribution of products to render the exercise of jurisdiction by this Court proper and necessary. This Court also has personal jurisdiction over Defendant as substantial parts of the events giving rise to this action's claims occurred in Florida.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff Ginsberg at all relevant times resided in this District and Defendant conducts relevant business and activities in this District. Moreover, a substantial part of the events giving rise to Plaintiff Ginsberg's claim, including her orders and purchases of the subject product, occurred in this District.

## FACTUAL BACKGROUND

10.     SAMe is an amino acid derivative normally synthesized in the body that may become depleted with sickness or age. Supplementing one's diet with SAMe and other vitamins and supplements has been found to be an effective way to overcome this deficiency. Some people

receive medical recommendations from doctors to take up to 1600 mg of SAMe a day in the form of over-the-counter SAMe supplements.

11.     SAMe in the human body is naturally concentrated in the liver and brain, and is a major methyl donor in the synthesis of hormones, nucleic acids, proteins, and phospholipids, and catecholamines and other neurotransmitters. SAMe is required for the synthesis of norepinephrine, dopamine, and serotonin, all important brain and body functions.[8] SAMe also facilitates glutathione usage which improves the body's antioxidant defense, and helps maintain acetylcholine levels which are necessary for cognitive function.[9]

12.     Although SAMe has been available to consumers in the U.S. market since the 1990s as a dietary and/or nutritional supplement, researchers continue to discover impressive benefits of SAMe. Most basically, research has long shown that SAMe helps maintain stable mood[10] and joint function without side effects.[11] As a result, it is regularly recommended by doctors for treatment of serious conditions of depression and arthritis. Moreover, because aging people often suffer joint

---

[8] SAMe's ability to boost brain cell methylation facilitates youthful DNA enzymatic actions which may help account for SAMe's mood-elevating properties. These enzymatic reactions are required for the healthy conversion of neurotransmitters such as serotonin and dopamine.

[9] A report published in Germany indicates that SAMe may help maintain healthy neurological function. The report revealed that: a) SAMe increased glutathionelevels by 50% and glutathione enzyme activity by 115%; b) SAMe decreased a measurement of free radical activity by 46%; and c) SAMe inhibited lipid peroxidation by 55% in culture.

[10] A recent study conducted at Harvard Medical School and Massachusetts General Hospital cited the benefits of SAMe for mood elevation.

[11] In 2002, an agency of the U.S. Department of Health and Human Services conducted a meticulous evaluation of SAMe. Its findings show the efficacy of SAMe in helping to maintain stable mood and joint function without any side effects.

discomfort and immobilization, SAMe supplementation addresses multiple problems people face as they grow older.

13.     In addition, research has shown that SAMe has multiple mechanisms of action that are used throughout the body, especially in the liver, where it functions to help maintain liver health. In particular, SAMe has multimodal mechanisms of action that are used in the liver and other parts of the body. Moreover, in order to perform its detoxification role, the liver continually performs large numbers of complex enzymatic reactions. SAMe facilitates healthy methylation enzymatic processes and boosts hepatic levels of glutathione, a critical antioxidant. When liver function is compromised, glutathione is depleted, which leads to free radical damage. In addition, SAMe acts as a methyl donor in the synthesis and formation of phosphatidylcholine and L-cysteine, both necessary for maintaining liver health. Thus, although largely known for its facilitation of optimal moods, SAMe has also shown benefits for the liver, brain, and joints.

14.     SAMe supplements sold in the U.S. market are typically manufactured in the form of enteric coated tablets, containing the active ingredient of SAMe as bound together in a stabilized salt form, known as s-adenosyl-methionine tosylate disulfate, and combined with non-active, stabilizing ingredients. The tablets are manufactured in a controlled environment and overlaid with enteric coating.

## SUBSTANTIVE ALLEGATIONS

15.     Unlike most other SAMe supplements sold in the U.S. consumer market, the subject product sold by Azorio are made in capsule form.

16.     By pre-release data and laboratory examination and testing, company and industry-wide knowledge of the chemical nature of SAMe, mandatory design specifications and quality control operations and material reviews in the manufacturing, packaging, labeling, and holding

operations for the subject product, and/or online complaints on Amazon.com webpages, Defendant has been on actual and/or constructive notice that the subject product lacks the represented amount of SAMe and SAMe potency and not fit for its intended purpose for use as a SAMe dietary supplement. Despite this knowledge, Defendant failed to disclose to Plaintiff and her putative classes the true quantity of SAMe contained in the subject product and actively concealed the subject product's substantially reduced SAMe potency at the time of manufacture, purchase, and thereafter. Defendant has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes while knowing of its substantially reduced SAMe potency.

17.     Azorio sells the subject product to consumers online, through one of its seller accounts on Amazon.com. This includes the accounts of Earth Natural Supplements (Seller ID: ANAL58EVMKY7H) and GOLDANDSTONES – SUPPLEMENTS (Seller ID: A2QZY8BV8FU3RW).

18.     Pictures of the subject product labels and/or the information contained on the subject product labels are made available to consumers on Amazon.com webpages prior to their online purchase of any of the privately labeled subject product. Consumers, including Plaintiff and putative class members, in all circumstances of purchase, whether online or in a store, have and continue to view the contents of the subject product labels, including the stated amount of SAMe, before making their purchase decision and payment for the subject product.

19.     The subject SAME product sold by Azorio on Amazon.com to the consumer public is sealed and packaged in bottles containing one of its private labels. Azorio's private labels include: Naturetition Supplements, PureControl Supplements, and Earth Natural Supplements.

20.     Azorio selected, ordered, created, designed and/or purchased their private labels and logos. In establishing its labels and logos, Defendant worked to create the design and consumer communications according to its preferences.

21.     The front of the Naturetition SAMe private label includes Naturetition's private logo (with the name "NATURETITION supplements") and states in large print "SAM-e" and "1500 mg[12]," and includes a label icon with the words "ALL NATURAL." The front of the label also states that the subject product contains "No Artificial Ingredients," "Binders," "Fillers," "Sugar," "Gluten," "Milk." The side of the label also indicates that the bottle contains 90 or 180 capsules of dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the Naturetition private label are displayed in Exhibit A. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 3 capsules. The "Supplement Facts" on the back and/or sides of the Naturetition private labels are also depicted in Exhibit A. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

22.     The front of the PureControl private label SAMe includes PureControl's private logo (with the name "PureControl Supplements") and states in large print "SAM-e" and "1500 mg."[13] The front of the label also states that the subject product contains "No Additives" and "No

---

[12] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

[13] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands

Preservatives." The side of the label also indicates that the bottle contains 90 or 180 capsules of the dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the PureControl private label are displayed in Exhibit B. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 2 capsules. The "Supplement Facts" on the back and/or sides of the PureControl private labels are also depicted in Exhibit B. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

23.    The front of the Earth Natural private label SAMe includes Earth Natural's private logo (with the name "Earth Natural Supplements") and states in large print "SAM-e" and "1500 mg."[14] The front of the label also states that the subject product is "Premium Quality," "100% Natural," and "Additives Free." The side of the label indicates that the bottle contains 90 or 180 capsules of the dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the Earth Natural private label are displayed in Exhibit C. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 3 capsules. The "Supplement Facts" on the back and/or sides of the Earth Natural private

---

throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

[14] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

labels are depicted in Exhibit C. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

24.     The subject product sold by Azorio under various private labels has not and does not contain the above stated amounts of milligrams of SAMe per serving and per capsule as represented by their respective private labels. In fact, the subject product's SAMe capsules contain less than 25% of the represented amount of active SAMe milligrams per serving, and approximately 80-90 mg of active SAMe per capsule.[15] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on the private labels of the SAMe product sold by Azorio.

25.     The subject product sold by Azorio under the Naturetition, PureControl, and Earth Natural private labels have and continue to be manufactured and packaged in the same manner. Accordingly, all subject product sold by Azorio contain the same design, manufacture, and/or processing, and approximately the same defective amount of SAMe. All subject product sold by Azorio under the Naturetition, PureControl, and Earth Natural private labels is without any industry-standard outer coating.

26.     By pre-release data and laboratory examination and testing, company and industry-wide knowledge of the chemical nature of SAMe, mandatory design specifications and quality

---

[15] The "Supplement Facts" section on Naturetition, PureControl, and Earth Natural private labels expressly state that the represented amount of 1500 mg is of SAM-e (as adenosyl-methionine-disulfate-tosylate). Even assuming the stated amount of 1500 mg connotes the amount of S-Adenosyl-L-Methionine Tosylate Disulfate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Even under this reading of the label, the included subject product capsules still contain only a fraction of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving.

control operations and material reviews in the manufacturing, packaging, labeling, and holding operations for the subject product, and/or online complaints on Amazon.com webpages, Azorio has been on actual and/or constructive notice that the subject product lacks the represented amount of SAMe and SAMe potency and not fit for its intended purpose for use as a SAMe dietary supplement, and falsely labeled as described above. Despite its knowledge, Azorio mislabeled its subject product bottles and failed to disclose to the consumer public, including Plaintiff and her putative classes, the true and accurate supplement facts regarding the amount and nature of the SAMe contained in its subject product. Similarly, Azorio also has and continues to actively conceal the true amount of SAMe at the time of purchase and thereafter. Azorio has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes as represented by the Naturetition, PureControl, and Earth Natural private labels.

<u>Deceptive Practices</u>

27.     The acts, practices, and product labeling of Azorio has and continue to be materially deceptive and misleading. The false labeling of the subject product has and continues to deceive and mislead consumers into believing that the subject product contains high amounts of SAMe which greatly exceed the subject products' actual SAMe content. The amount of SAMe contained in a SAMe supplement is its most distinguishing feature and a significant purchase motivator for purchasers of such supplements.

28.     Azorio has known and currently knows, or should know and should have known, that the subject product is and has not been accurately labeled and grossly overstates the amount of SAMe manufactured into the subject product's capsules and stated serving sizes. Knowledge of the false labeling and its gross overstatement of the amount of included SAMe was easily attainable

through scientific knowledge of SAMe, its biological functions, and its tosylate disulfate salt form; knowledge of proper SAMe controlled manufacturing processes and the consumer dietary supplement industry; knowledge regarding the product's manufacturing, specifications, testing, and ingredients included in the specific subject product, including capsule weight[16]; internal pre-release laboratory testing; and online complaints and feedback.

29.     Azorio intentionally, recklessly, and/or negligently misrepresented to consumers the amount of active SAMe contained in the subject product by actively mislabeling the subject product with false and grossly overstated representations of the amount of SAMe included in the supplement's capsules and serving sizes.

30.     Azorio intentionally, recklessly, and/or negligently misled consumers into believing they were securing with their purchase of the subject product a value purchase of fully effective SAMe supplement, containing the stated amounts of SAMe.

31.     Azorio intentionally, recklessly, and/or negligently advertised and/or represented the subject product to consumers with material omissions and active concealment of material facts. The material omissions by Azorio include failure to disclose on the subject product labels the accurate measure of active SAMe included in each included capsule, as is required on product labels of SAMe supplements. An accurate measure of the amount of active SAMe included in each capsule is material information which any reasonable consumer would need to know in the context of purchasing SAMe supplements in order to make a reasonably informed purchase decision.

---

[16] The entity fill weight of the subject product capsules typically approximates only 870-910 mg, making the inclusion of the represented 500-750 mg of active SAMe per capsule (when considered along with the necessary amount of s-adenosyl-methionine tosylate disulfate needed to maintain that amount of active SAMe and the minimal amount of filler material (*e.g.,* gelatin and rice powder) necessary for capsule formation) a manufacturing/structural unlikelihood.

Particularly with the subject product, where each included SAMe capsule contains significantly less active SAMe per capsule as compared with many alternative SAMe supplements available to U.S. consumers online and sold throughout the industry, accurate disclosure of the amount of included active SAMe is both material and necessary for consumers. In fact, many SAMe supplements sold in the consumer market contain 200 or 400 mg of active SAMe per tablet, and Azorio's nondisclosure of the accurate amount of active SAMe contained in the subject product (approximately between 80-90 mg of SAMe per capsule) has and continues to be materially deceptive to reasonable consumers expecting their purchased SAMe supplements to contain a higher amount per capsule. Moreover, because SAMe supplements sold in the consumer market typically contain labels which accurately disclose the amount of active SAMe contained within the labeled SAMe supplement, reasonable consumers expect accurate disclosure of this information, and have and continue to be deceived as to the quality and quantity of SAMe in the subject product purchased without such disclosure.  Moreover, clear and accurate disclosure of the amount of active SAMe contained in each capsule is material and necessary to consumers as reasonable consumers purchase SAMe supplements in an effort to consume a prescribed or recommended amount of SAMe supplementation as prescribed by their doctors or medical professionals which can only be maintained with clear and accurate disclosure of SAMe amounts on the subject product labels and web retail postings.

32.    Azorio intentionally, recklessly, and/or negligently engaged in deceptive and misleading acts by devising misleading and deceptively manipulated serving sizes (i.e., 3 capsules per serving) whose true amounts of active SAMe do not correlate to proper dosages of SAMe which are typically recommended by those in the medical profession or used in the SAMe supplement industry. These manipulated serving sizes which are printed on the subject product

labels in their "Supplement Facts" section are represented to consumers as typical serving sizes, and assumed to provide consumers with an amount of SAMe typically expected from a serving of a SAMe supplement in the supplement industry. In reality, the subject product labels grossly overstate the amount of active SAMe present in every serving. As a result, the actual amount of SAMe present in the printed serving sizes (i.e., 3 capsules per serving) bear no correlation to any recommended amount of SAMe to be supplemented in one's diet on a regular basis. Such manipulation of serving sizes misleads consumers into believing that by consuming the stated serving size they are receiving a proper and typical dosage amount of SAMe, when they are, in fact, receiving a different (and far less) amount of the active SAMe they seek.

<u>Injury</u>

33.    Plaintiff and her putative classes have been economically injured as a result of Azorio's deceptive acts, practices and false labeling. The subject product's deceptive labels, which Plaintiff and the putative classes of consumers viewed online prior to their purchase and which communicated false information and failed to disclose material information about the true amount of SAMe included in the subject product capsules, caused them to decide to purchase the subject products over other available accurately labeled SAMe supplements available on Amazon.com and in the market.

34.    Plaintiff and putative class members acted reasonably in relying on Azorio's misrepresentations and omissions, the truth of which they could not have reasonably discovered.

35.    Plaintiff and putative class members have been injured by Azorio's illegal and deceptive acts in the entire amount of the purchase price they paid for the subject products which were worthless and unfit for their intended purpose as a SAMe supplement because the subject product capsules were lacking in sufficient amounts of active SAMe for a dietary supplement of

its kind as typically sold in the market and the product's accurate measure of active SAMe was not revealed to the consumer.

36.     As a result of Azorio's illegal and deceptive practices, Plaintiff and putative class members did not receive the benefit of their bargain in their purchases of the subject product.

37.     Plaintiff and putative class members relied upon Azorio's false and deceptive labeling and material omissions in choosing to purchase the subject product. Had Plaintiff and putative class members known that the subject product was falsely and deceptively labeled they would not have paid the purchase price and/or purchased the subject product. Azorio's false and deceptive labeling and material omissions caused Plaintiff and putative class members to purchase the subject product over other available SAMe supplements sold on the market. Had Plaintiff and putative class members never viewed the subject products' deceptive and misleading labels, they would not have been misled to believe that the subject products contained 500 mg of SAMe per capsule, and would not have been injured as they were from having selected and purchased the subject product at any purchase price.

38.     Through their falsely stated SAMe quantities and material omissions regarding the true amount of active SAMe included in the subject product capsules, Azorio misled consumers, including Plaintiff and putative class members, into purchasing the subject product with the false belief that they were securing a value purchase for effective SAMe supplements containing the stated quantities of SAMe. In fact, far from receiving a value purchase with the amount of SAMe printed on the subject products' labels, consumers, including Plaintiff and the putative classes, purchased a product which, because of its minimal quantity of active, was without the stated quantities of SAMe and unfit for its intended use as a SAMe supplement, and thus of no value to consumers. Moreover, far from receiving a purchase of the represented value, consumers,

including Plaintiff and the putative classes, were misled into purchasing a product of no value whose use could lead to health complications for those requiring certain levels of SAMe supplementation and who, like most consumers, typically rely on the accuracy of dietary supplement labelling to maintain a proper dosage of SAMe as recommended by their doctors and/or health professionals.

39.    The subject product's deceptive labels also caused Plaintiff and the putative classes to pay a premium or inflated price per milligram of active SAMe included in the subject product as charged by Azorio for the subject product over other accurately labeled SAMe supplements in the market which charge lower prices per milligram for accurately labeled SAMe supplements.

40.    Thus, the subject products' deceptive labels caused Plaintiff and the putative classes to pay a price premium or inflated price to Azorio for the subject product instead of purchasing another cheaper (as measured by price per milligram of active SAMe) and properly manufactured SAMe supplement. Had Plaintiff and putative class members never viewed the subject products' deceptive and misleading label, they would not have been misled into believing that the subject product contained 500 mg of SAMe per capsule, and would not have been injured as they were from having paid a premium or increased price for the small amount of active SAMe actually contained in the capsules.

41.    Azorio's false and deceptive labeling also caused Plaintiff and putative class members to not receive the monetary value of their purchase. Plaintiff and putative class members received less than 25% of the amount of SAMe which the subject product labels represented would be included in their purchase for the price they paid.

42.    Azorio's false and deceptive labeling also caused Plaintiff and putative class members to be deprived of the opportunity to buy and consume a proper dosage and/or

recommended amount of SAMe. Because of the subject products' false and deceptive labels, Plaintiff and putative class members were led to believe they were consuming 500 mg of SAMe per capsule. They did not realize that they were only consuming approximately 80-90 mg of SAMe when consuming subject product capsules, and were thus deprived of the health benefits of a full and proper dosage.

## **CLASS ACTION ALLEGATIONS**

43.     Plaintiff Ginsberg brings this action on her own behalf and on behalf of all other persons similarly situated, pursuant to the Federal Rules of Civil Procedure 23(a) and (b)(2) and/or (b)(3), on behalf of classes consisting of persons who purchased the subject product. Excluded from the classes are Azorio, its officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Azorio has or had a controlling interest.

44.     The classes which Plaintiff Ginsberg seeks to represent are defined as:

1) All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

   Excluded from this class are any persons or other entity related to or affiliated with Azorio; any person, firm, trust, corporation, or other entity who purchased for resale from Azorio, or any entity related to or affiliated with Azorio; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2) All persons who purchased the subject product in or as a resident of the state of Florida ("Florida Subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Azorio; any person, firm, trust, corporation, or other entity who purchased for resale from Azorio, or any entity related to or affiliated with Azorio; or any person who has an action for damages for personal injury or death or property damage against Defendants.

## NUMEROSITY

45.    The members of the Classes are so numerous that joinder of all members is impracticable.  The Classes are made up of thousands of consumers.  The precise number of Class members for the Classes can only be ascertained through discovery, which includes Azorio's sales records. The disposition of their claims through a class action will benefit all parties to this action and this Court.

## COMMON QUESTIONS OF LAW AND FACT

46.    There is a well-defined community of interest in the questions of law and fact involved which affect the Plaintiff and members of the Classes.

47.    The questions of law and fact common to the Classes predominate over questions which may affect individual members, and include, but are not limited to, the following:

    (a)    Whether the subject product labels contained false, deceptive and/or misleading representations regarding the amount of active SAMe contained in the subject product capsules;

    (b)    Whether the subject product labels contained false, deceptive and/or misleading representations regarding the amount of active SAMe contained in the serving size noted on the labels;

(c)     Whether the subject product labels contained deceptive, misleading, and/or manipulated serving sizes which induced consumers to purchase the subject product;

(d)     Whether the subject product is unfit for purposes of its intended use as a SAMe supplement;

(e)     Whether the subject product labels contained material omissions regarding the amount of active SAMe contained in the subject product SAMe supplements contained in the subject product bottles;

(f)     Whether reasonable consumers would be and/or were in fact deceived by Defendant's alleged false, deceptive and/or misleading representations;

(g)     Whether Plaintiff, putative class members, and reasonable consumers paid an inflated price and/or price premium for the subject product and/or the amount of SAMe they received in their purchase;

(h)     Whether Azorio violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213;

(i)     Whether Azorio breached the subject product's implied warranty of merchantability, including whether the subject product contained sufficient amounts of SAMe pers serving and/or per capsule to qualify as a merchantable dietary supplement, fit for its intended purpose as a SAMe dietary supplement;

(j)     Whether Azorio's representations online and on the subject product labels constitute express warranties and whether Azorio breached such express warranties;

20

(k)     Whether Azorio's representations online and on the subject product labels constitute intentional or negligent misrepresentations;

(l)     Whether class members are entitled to actual, statutory, and/or punitive damages and if so, the appropriate amount thereof.

## **TYPICALITY**

48.     The claims of Plaintiff Ginsberg, as the representative Plaintiff, are typical of the claims of the classes because Plaintiff and members of the Classes were all subject to Azorio's deceptive sales practice in their purchases of the subject product. Plaintiff, like all class members, purchased bottles of the subject product which were falsely and deceptively labeled, and unfit for their intended purposes as SAMe supplements.

## **ADEQUACY OF REPRESENTATION**

49.     Plaintiff Ginsberg, as the representative Plaintiff, will fairly and adequately assert and protect the interests of the Classes as:

(a)     Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Classes; and

(b)     Plaintiff has no conflict of interest that will interfere with the maintenance of this class action.

## **PREDOMINANCE**

50.     With respect to the Classes, questions common to the classes predominate over those which only affect individual purchasers of the subject product. This case involves Azorio's deceptive practices in the labeling and sale of the subject product. Liability will primarily be predicated upon the jury's evaluation of Azorio's sales, marketing, and labeling practices in regards to the subject product, and the qualitative and quantitative nature of the subject product.

## **SUPERIORITY**

51.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

(a)     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

(b)     The Classes are so numerous as to make joinder impracticable.  The Classes, however, are not so numerous as to create manageability problems.  There are no unusual legal or factual issues which would create manageability problems;

(c)     Prosecution of separate actions by individual members of the Classes would create a risk of inconsistent and varying adjudications against Defendant;

(d)     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e)     A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

## **FIRST CAUSE OF ACTION**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"))**
**(Fla. Stat. §§ 501.201, *et seq*.)**

52.     Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the Classes.

53.     Plaintiff asserts this cause of action under Florida law.

54.     Plaintiff and the classes repeat and allege the allegations contained in paragraphs 1-51 of this complaint as if fully set forth herein.

55.     Plaintiff and class members who purchased the subject product are "consumers" under the FDUTPA.

56.     Azorio's practices, acts, policies and course of conduct violated FDUTPA in that:

      (a)     Azorio knowingly and willfully, negligently, and/or recklessly engaged in unfair, unconscionable, and deceptive acts and practices in or affecting commerce, through its false and deceptive labeling of the subject product and material omissions regarding the true amounts of SAMe contained in the subject product bottles. Such patterns of conduct were uniform in nature with respect to the marketing and sale of the subject product.

      (b)     Azorio knowingly and willfully concealed, suppressed and consciously omitted material facts from Plaintiff and other members of the Classes knowing that consumers would rely on the subject product bottle labeling and marketing and Azorio's uniform misrepresentations concerning the amount of SAMe contained in subject product bottles and designated serving sizes.

57.     Azorio's acts and material omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

58.     Plaintiff and class members relied upon Azorio's deceptive acts and material omissions in connection with their purchase of the subject product.

59.     To date, Azorio has and continues to knowingly accept the benefits of their deception and improper conduct in the form of profits from the increased sale of the subject product.

60.     As a proximate result of the FDUTPA violations described herein, Plaintiff and class members: (a) purchased and consumed the subject product which they would not otherwise have purchased and consumed; (b) suffered economic losses consisting of the purchase price of the subject product or, alternatively, the price premium they paid for the SAMe they received in the subject product; and (c) suffered and will suffer the loss of diminished dosages of SAMe supplementation.

61.     As a direct and proximate result of these deceptive commercial practices, Plaintiff and the members of the Classes have been damaged and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

62.     Plaintiff and class members seek actual damages, restitution of purchase costs, and civil penalties permitted by Fla. Stat. §§ 501.2075.

63.     Plaintiff and class members also seek appropriate equitable relief, including an order requiring Azorio to adequately disclose the subject product's true amount of active SAMe, provide accurate and reasonable supplement serving sizes as disclosed on supplement labels throughout the SAMe supplement industry, as well as an order enjoining Azorio from further engaging in such mislabeling and material omissions in the future.  Plaintiff and class members also seek attorneys' fees and any other just and proper relief available under FDUTPA.

## SECOND CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability and Fitness)

64.     Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the classes.

65.     Plaintiff asserts this cause of action under Florida law.

66.     Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 of this complaint as though set forth fully herein.

67.     Azorio is a "merchant" as defined under the Uniform Commercial Code ("UCC") and Fla. Stat. § 672.314.

68.     All bottles of subject product are "goods" as defined under the UCC.

69.     Azorio impliedly warranted that the subject product is of a merchantable quality and fit for use as SAMe dietary supplement.

70.     Azorio breached the implied warranty of merchantability because the subject product labeled and sold to Plaintiff and members of the putative classes has and continues to not be of a merchantable quality and/or fit for its intended use due to the minimal and insufficient amounts of active SAMe contained in the subject product capsules and designated serving sizes.

71.     Plaintiff's and Class members' interactions with Azorio suffice to create privity of contract between Plaintiff and Class members, on the one hand, and Azorio, on the other hand; however, privity of contract need not be established nor is it required because, as consumers, Plaintiff and Class members are intended third party beneficiaries of contracts (including implied warranties) between the manufacturer of the subject product and Azorio who sells the subject product to consumers. The implied warranty of merchantability and fitness is designed for the benefit of consumers who purchase(d) the subject product.

72. As a direct and proximate result of the breach of said warranties, Plaintiff and Class members were injured and are entitled to damages.

73. Any attempt by Azorio to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers is unconscionable and unenforceable because Azorio knowingly sold a falsely and deceptively labeled product without informing consumers as to the subject product's true amount of contained SAMe.

74. Plaintiff and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Azorio's conduct described herein.

75. Azorio was provided notice of these issues by complaints lodged online and their knowledge regarding the subject product.

## THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

76. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the classes.

77. Plaintiff asserts this cause of action under Florida law and Fla. Stat. § 672.313.

78. Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 of this complaint as though set forth fully herein.

79. Azorio, directly or indirectly, provided uniform affirmative misrepresentations about the subject product in its misleading advertising and marketing, including the false and deceptive labeling of the subject product. The uniform capsules and the various affirmative descriptions made concerning the subject product, including the product descriptions made on its private labels (*see* Exhibits A-C), were made part of the basis of the bargain and thereby created an express warranty that the subject product conformed to the label descriptions pursuant to the

UCC express warranty provisions adopted by Florida under Fla. Stat. § 672.313. Plaintiff and the classes thereby relied upon such warranties. By law, Plaintiff and their classes have entered into certain express warranty agreements with Azorio.

80.     To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Azorio's representations alleged on the labels and online were not as represented.

81.     Had a Class member researched Azorio's SAMe brands online on Amazon.com, he or she would have found the same or substantially similar false and/or deceptive supplement facts, which falsely report inaccurate supplement information on par with the false and deceptive information printed on the subject product bottle labels.

82.     Azorio breached its express warranties to Plaintiff and their classes when it labeled and/or sold the subject product bottles which included uniformly impotent SAMe supplement capsules that did not contain the represented amount of SAMe and that did not conform to the description of the SAMe supplement communicated to consumers on the label and in other marketing sources.

83.     As a result of the foregoing, Plaintiff and the classes are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Azorio acted in a manner contrary to public policy and with intent to mislabel the subject product.  Demand on behalf of Plaintiff and putative class members was made upon Azorio on or about May 27, 2020, in the form of a pre-suit demand letter has been provided to Azorio.  Plaintiff will continue to assert this claim if after thirty (30) days from the deliverance of the pre-suit demand letter Azorio fails to offer relief to Plaintiff and putative class members that is fair and reasonable in relation to the injury they suffered.

## FOURTH CAUSE OF ACTION
### (Violation of the Magnuson-Moss Warranty Act)
### (15 U.S.C. §§ 2301 *et seq*. ("MMWA"))

84.    Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the classes.

85.    Plaintiff asserts this cause of action under federal law and the MMWA, 15 U.S.C. § 2301 *et seq*.

86.    Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 and 64-83 of this complaint as though set forth fully herein.

87.    Plaintiff and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

88.    The subject product purchased by Plaintiff and Class members is considered a "consumer product" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

89.    Azorio is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

90.    This claim is being brought under Section 2310(d) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction providing a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

91.    The subject products' implied warranties are accounted for under Section 2301(7) of the MMWA and are warranties which Azorio cannot disclaim when it fails to provide merchantable goods.

92.    As set forth herein, Azorio breached its implied and express warranties with Plaintiff and Class members.

93.     The subject product SAMe capsules sold by Azorio under various private labels share common design and manufacture, including their impotent state and minimal amount of active SAMe. Accordingly, all subject product capsules are similarly mislabeled and deceptively advertised.

94.     Plaintiff and class members hereby demand that Azorio pay the expenses associated with the purchase and shipping of the subject product which were borne by consumers, including Plaintiff and class members.

95.     As a direct and proximate result of Azorio's breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and Class members have suffered damages in an amount to be proven at trial.

96.     The amounts in controversy for Plaintiff and Class members' individual claims meet or exceed the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

97.     Plaintiff and Class members are entitled to recover damages as a result of Azorio's breach of warranties. Plaintiff and Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA, 15 U.S.C. § 2310(d)(2). Demand on behalf of Plaintiff and putative class members was made upon Azorio on or about May 27, 2020, in the form of a pre-suit demand letter has been provided to Azorio.  Plaintiff will continue to assert this claim if after thirty (30) days from the deliverance of the pre-suit demand letter Azorio fails to offer relief to Plaintiff and putative class members that is fair and reasonable in relation to the injury they suffered.

## FIFTH CAUSE OF ACTION
### (Intentional Misrepresentation)

98.     Plaintiff Ginsberg asserts this cause of action on behalf of herself and the classes.

99.     Plaintiff asserts this cause of action under Florida law.

100.    Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 of this complaint as though set forth fully herein.

101.    Azorio intentionally made and/or set forth to a market of consumers false representations regarding the nature of the subject product and the amount of active SAMe contained in the subject product which they knew was not accurate.

102.    Azorio has and continues to know that the misrepresentations printed on the labels of the subject product bottles are false and misleading.

103.    Azorio has and continues to intend that the misrepresentations printed on the labels of the subject product bottles induce consumers, including Plaintiff and the class members, into relying on the misrepresentations in deciding to purchase the subject product and/or pay a price premium in order to obtain a prescribed or desired amount of active SAMe for dietary supplement and health purposes.

104.    Plaintiff and the class members relied upon the misrepresentations printed on the labels of the subject product bottles in choosing to purchase the subject product.  Because of Plaintiff's and the class members' reliance on the misrepresentations, Plaintiff and the class members' were thereby caused harm in the form of having paid monies to purchase the subject product which is not of merchantable quality and/or not fit for its intended use, and/or paid a price premium for the amount of active SAMe contained in the subject product bottles.

105.     Plaintiff's and class members' reliance on the misrepresentations printed on the labels of the subject product bottles was justified because the represented amount of SAMe per serving was not, and is not, obviously false, as many SAMe dietary supplements sold in the consumer market may contain those or similar amounts of SAMe.  Moreover, Plaintiff and class members acted as typical and reasonable consumers under the circumstances in relying upon the assumed accuracy of dietary supplement and vitamin labels in deciding what product item and brand to purchase.

106.     Plaintiff and class members have, as a result of their reliance on the misrepresentations printed on the labels of the subject product bottles, suffered injury and pecuniary damages as set forth in this complaint, including monies paid for the purchase of the subject product and/or a price premium for the included amount of active SAMe.

### SIXTH CAUSE OF ACTION
### (Negligent Misrepresentation)

107.     Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the classes.

108.     Plaintiff asserts this cause of action under Florida law.

109.     Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 of this complaint as though set forth fully herein.

110.     Plaintiff and the class members, commercial consumers of the subject product, stood in a "special relationship" with Azorio, the distributor and/or retail seller of the subject product, and justifiably relied upon its representations in purchasing and using the subject product. In making its false and deceptive representations regarding the subject product, Azorio held or appeared to hold unique or special expertise regarding the chemical and ingredient makeup of the

product's SAMe contents and potency. Azorio held itself out as holding some type of special expertise regarding SAMe supplements, or at least possessing some level of medical or scientific backing for its claims regarding the subject product SAMe, the amount of SAMe contained in its capsules and their health benefits.

111.    Plaintiff and putative class members also stood in a "special relationship" with Azorio, because Azorio, as a distributor and/or retailer of many types of vitamins and dietary supplements, maintained unique knowledge of the ingredient make-up of their products and their proper and safe constitution. Plaintiff and putative class members therefore reasonably placed their trust and confidence in the representations made by Azorio regarding the amount of SAMe contained in the subject product and its manufacture.  Moreover, Azorio, as the  distributor and/or retailer of the subject product, was well aware that the subject product label's representations would cause a reasonable consumer to purchase and rely upon the consumption of the subject product for maintaining their recommended dosages of SAMe supplementation; as well as to use the label's representations to evaluate the subject product in comparison to the numerous other SAMe brands and supplements placed for sale on the Amazon.com website and other retail venues. Azorio therefore owed a duty of care to consumers, including Plaintiff and the class members, to accurately represent the quality and quantity of its vitamin and dietary supplement products, including the subject product.

112.    In breach of its duty of care, Azorio negligently and/or recklessly made and/or set forth to a market of consumers false, deceptive, and misleading representations regarding the nature of the subject product and the amount of included active SAMe that it should have known was not fair and accurate.

113.    The information supplied in Azorio's subject product labels were known by Azorio to be desired by the reasonable consumer for the purpose of selecting a SAMe supplement with sufficient SAMe and consumer value for purchase.

114.    Plaintiff and class members were influenced by the subject product labels' deceptive and misleading representations and caused to select the subject product for purchase over other accurately labeled SAMe supplements available for purchase on Amazon.com and in the rest of the market. This selection was to Plaintiff and class members' detriment as the product was falsely labeled and unfit for purposes of a SAMe supplement.

## SEVENTH CAUSE OF ACTION
### (Unjust Enrichment)

115. Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the classes.

116.    Plaintiff asserts this cause of action under Florida law.

117.    Plaintiff and the classes hereby incorporate by reference the allegations contained in paragraphs 1-51 of this complaint as though set forth fully herein.

118.    Azorio was enriched and benefited from the subject product's increased sales, sale proceeds, and/or its premium or inflated sales price which were accrued by Azorio as a result of Plaintiff and putative class members having been deceived by the subject product's false product labels and representations and were thereby caused to purchase the subject product from Azorio. Plaintiff and putative class members thereby conferred a benefit on Azorio. Azorio had knowledge of this benefit conferred in the form of sales and transaction records and its receipt of sales proceeds from the sale of the subject product to Plaintiff and putative class members.

119.     The enrichment and benefit to Azorio came at the expense of Plaintiff and putative class members who purchased the subject product from Azorio and expended monies for the subject product, which was not of merchantable quality and/or fit for its intended use as a dietary supplement, and/or paid a premium or inflated sales price for the subject product as a result of viewing its deceptive and misleading product label or representations.  Azorio voluntarily accepted and retained the financial benefit conferred upon it by Plaintiff and putative class members from their purchase of the subject product.

120.     The circumstances are such that equity and good conscience require Azorio to make restitution to Plaintiff and putative class members for their enrichment which came as a result of the false and misleading product labeling and representations on the subject product bottles and Amazon website, and not be permitted to retain the revenues and/or premiums accrued from the sale of the subject product to Plaintiff and putative class members. The circumstances are such that it would be inequitable for Azorio to retain the benefit conferred on it by Plaintiff and putative class members in the form of the sales proceeds from the subject product and/or its premium or inflated sales price without paying Plaintiffs and putative class members the value of that benefit.

121.     Azorio has failed to make restitution and/or pay the value of the benefit conferred upon it by Plaintiffs and putative class members.

122.     As a result, Plaintiff and the putative class has been damaged.

### EIGHTH CAUSE OF ACTION
**(Injunctive Relief)**

123.     Plaintiff Ginsberg asserts this cause of action against Azorio on behalf of herself and the classes.

124.    Plaintiff asserts this cause of action and request for injunctive relief under Florida and federal law.

125.    Plaintiff and Class members repeat each and every allegation contained in paragraphs 1-51 of this complaint as if set forth herein.

126.    Azorio's conduct is improper and deceptive and has caused injury to Plaintiff and the putative class members. The FDUTPA cause of action alleged herein provides for injunctive and declaratory relief.  *See* Fla. Stat. Ann. § 501.21.

127.    The grounds for an injunction prohibiting Azorio from employing any currently used false and deceptive private labels and/or selling a product unfit for its intended purpose as a dietary supplement are present herein.  The grounds for such an injunction also includes the fact that Plaintiff and the putative classes have a likelihood of success on the merits; irreparable harm will be done to future purchasing consumers of the subject product if the injunction is denied; the balance of the equities is in favor of granting the injunction and Plaintiff and the putative classes have been injured by Azorio's actions; and future consumers, including Plaintiff, may continue to be injured absent the requested injunctive relief. Plaintiff has and intends to continue to shop online, including the Amazon website which continues to sell the subject product, for many shopping purposes including to purchase of SAMe dietary supplements. Plaintiff, in the course of shopping on Amazon.com which sells the subject product in the present or future, will likely, as a reasonable consumer acting reasonably under the circumstances, be subject to the knowing or unknowing purchase of the false and deceptively labeled subject product sold under one of Azorio's private labels. Plaintiff thus faces a real and immediate threat of recurrent deception and consequent injury in her future purchases of SAMe. In addition, Azorio has refused to act on grounds that apply generally to the classes and/or has acted in a manner that applies generally to

the classes and without the above requested injunction will continue its unlawful consumer-oriented practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for a judgment against Defendant as follows:

A.      For an order certifying the Classes, appointing Plaintiff as representative of the Classes, and appointing the law firms representing Plaintiff as counsel for the Classes;

B.      For compensatory damages, including actual damages, sustained by Plaintiff and the classes, or, alternatively, statutory damages and civil penalties as prescribed by the relevant statutes;

C.      For compensatory damages and/or restitution or refund of all funds acquired by Defendant from Plaintiff and the classes, and the general public as a result of Defendant's unlawful, unjust, unfair, deceptive and unconscionable practices described herein;

D.      For punitive and all other damages available to the Classes;

E.      For payment of costs of suit herein incurred;

F.      For both pre-and post-judgment interest on any amounts awarded;

G.      For payment of reasonable attorneys' fees and expert fees;

H.      For injunctive relief as set forth herein;

I.      For equitable relief as the Court may deem proper; and

J.      For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: June 4, 2020

<div style="margin-left:40%">

**ARONOVITZ LAW**

By:    */s/ Barbara Perez*
Tod Aronovitz (FBN 186430)
Barbara Perez (FBN 989304)
Town Center One, Suite 2201
8950 SW 74 Court
Miami, Florida 33156
Tel: 305-372-2772
ta@aronovitzlaw.com
bp@aronovitzlaw.com


Jay I. Brody
Gary S. Graifman
**KANTROWITZ, GOLDHAMER
& GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
Jbrody@kgglaw.com

*Attorneys for Plaintiff and the
Putative Classes*

</div>