## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

_____

CORI ANN GINSBERG, on behalf of herself )    Civil Action No.: 1:20-cv-22329-CMA
and all others similarly situated, )
                            )
           Plaintiff, )
                            )    **FIRST AMENDED CLASS ACTION**
       vs. )     **COMPLAINT**
                            )
AZORIO, LLC, VITAMINS BECAUSE LLC, )
and CT HEALTH SOLUTIONS LLC, )
                            )
       Defendants. )    **JURY TRIAL DEMANDED**
_____ )

      Plaintiff Cori Ann Ginsberg, ("Plaintiff" or "Ginsberg"), on behalf of herself and all others similarly situated, by her undersigned counsel, alleges against Defendants Azorio, LLC ("Azorio"), Vitamins Because LLC ("Vitamins Because"), and CT Health Solutions LLC ("CT Health") (collectively, "Defendants"), the following upon personal knowledge as to her own acts, and based on the investigation conducted by her counsel, as to all other allegations:

### SUMMARY OF THE ACTION

      1.     Plaintiff brings this class action on behalf of herself and all other persons who were damaged by Vitamins Because's and/or CT Health's manufacture and deceptive labeling of their non-coated S-adenosylmethionine ("s-adenosyl-methionine" or "SAMe," "SAM-e," "SAME," "sam-e," "same," or "samee") dietary supplement capsules (the "product" or the "subject product") which are fraudulently labeled and defectively manufactured.

      2.     Vitamins Because and/or CT Health ("Defendant manufacturers") manufacture and provide the subject product for sale directly to consumers at their vitamin stores in Florida and

through their retail websites https://vitaminsbecause.biz/[1] and http://doctorvitaminstore.com/[2] (*see* Exhibit A), as well as through third party retail sellers[3] who distribute the product under their own brand names online, through Amazon.com and ebay.com, and in stores throughout the country (*see e.g.* Exhibits B-D). In all consumer venues, the subject product is fraudulently labeled representing to consumers that the SAMe product contains a particular amount of SAMe per serving, when, in reality, the product contains only a small fraction of the claimed amount of active SAMe. The subject product labels' false claims concerning the amount of SAMe included in their capsule pills mislead consumers into purchasing the non-coated SAMe dietary supplement capsules manufactured by Vitamins Because and/or CT Health under false pretenses. The product's misleading labeling may also lead to significant injury or health concerns to unknowing purchasers who rely on the accuracy of the advertised amount of SAMe to make informed purchasing decisions and consume a proper dosage of the dietary supplements.

3.      As a third party retail seller, Azorio provides the subject product for sale online to consumers under its own private label brand names and packaging, through various seller accounts on Amazon.com. Azorio's private label brands include (but may not be limited to): Naturetition

---

[1] https://vitaminsbecause.biz/products/buy-1-get-2-free-sam-e-1500mg-90-or-180-capsules. Until recent months, the non-coated SAMe capsule dietary supplements were sold under two product numbers and sizes: 1) 90ct #10438 and 2) 180ct #11718.

[2] *See* http://www.doctorvitaminstore.com/10438_SamEPg1.html.   Until recent months, non-coated SAM-e capsule dietary supplements were sold under two product numbers and sizes: 1) product # 10438 (90 capsules) and 2) product # 11718 (180 capsules).

[3] Third party retail sellers and brands of Vitamins Because and/or CT Health's SAMe product include, but are not limited to: We Like Vitamins LLC ("We Like Vitamins"), Gmax Central LLC (under the brand "NusaPure"), aSquared Brands LLC ("aSquared"), Inspire Now Pty Ltd (under the brand "BoostCeuticals"), Healthy Way Rx LLC (under the brands "Healthy Way Rx" and "NasaBe'Ahava"), Jolly Dollar Supply Company LLC (under the brand "Mental Refreshment") and Azorio, LLC (under various brands, including "Naturetition," "PureControl," and "Earth Natural").

Supplements ("Naturetition")[4], PureControl Supplements ("PureControl")[5], and Earth Natural Supplements ("Earth Natural")[6]. Azorio's seller accounts on Amazon.com include (but may not be limited to): Earth Natural Supplements (Seller ID: ANAL58EVMKY7H) and GOLDANDSTONES – SUPPLEMENTS (Seller ID: A2QZY8BV8FU3RW). The subject product sold by Azorio is packaged in plastic bottles, with 90 or 180 capsules filling each bottle, and sealed with plastic bottle caps. The subject product sold by Azorio is fraudulently labeled representing to consumers that the SAMe product contains 1500 milligrams ("mg") of SAMe per serving, when, in reality, the product contains less than 25% of that claimed amount of active SAMe. Azorio's false claims concerning the amount of SAMe included in the subject product capsules sold under its private label brands mislead consumers into purchasing their SAMe product under false pretenses. The misleading labeling on the subject product sold by Azorio may also lead to significant injury or health concerns to unknowing purchasers who rely on the accuracy of the advertised amount of SAMe to make informed purchasing decisions and consume a proper dosage of the dietary supplements.

4.     As alleged in detail below, Vitamins Because and/or CT Health's non-coated SAMe dietary supplement capsules are also defectively manufactured without the necessary coating for consumer sale and consumption. Due to its defective production in non-coated capsule

---

[4] *See* https://www.amazon.com/SAM-1500mg-180-Capsules-Naturetition/dp/B01AFGG7O6/ref=sr_1_8?dchild=1&keywords=naturetition+sam-e&qid=1588033887&s=hpc&sr=1-8 and https://www.amazon.com/SAM-1500mg-Capsules-Naturetition-Supplements/dp/B01AFGG66U/ref=sr_1_7?dchild=1&keywords=naturetition+sam-e+90+capsules&qid=1589576229&sr=8-7.
[5] *See* https://www.amazon.com/SAM-1500mg-Capsules-PureControl-Supplements/dp/B017VEG9FM/ref=sr_1_24?dchild=1&keywords=purecontrol&qid=158803483 5&sr=8-24.
[6] *See* https://www.amazon.com/SAM-1500mg-Caps-Natural-EarhNaturalSupplements/dp/B0143AOLO8/ref=sr_1_6?dchild=1&keywords=earth+natural+sup plements+SAM-e&qid=1588034487&sr=8-6.

form, the product lacks the industry-standard protective coating designed to protect the consumer's upper gastrointestinal ("upper GI") tract and prevent an early release of acid and premature absorption in the upper GI tract during the product's digestion.

5.      Unlike many other SAMe supplements sold in the U.S. consumer market, the subject product manufactured by Vitamins Because and/or CT Health is not packaged in blister packs. The subject product, Vitamins Because and/or CT Health's non-coated SAMe capsules, is often packaged in blue plastic bottles, with 90 or 180 capsules filling each bottle, and sealed with white bottle caps.

6.      Because of Defendants Vitamins Because's, CT Health's, and Azorio's (collectively, "Defendant manufacturers and retailers") scientific knowledge of the SAMe amino acid derivative, its biological functions, and its tosylate disulfate salt form; knowledge of the SAMe controlled manufacturing process and the consumer dietary supplement industry; knowledge regarding the manufacturing and packaging of the specific subject product; its laboratory testing, capsule weight, and consumer complaints and feedback; Defendant manufacturers and retailers are and were on notice, or should have reasonably been on notice, that the subject product was falsely labeled to the consumer public and defectively manufactured, and thus not fit for its intended dietary supplement purpose and claimed SAMe supplementation. At the time of order and purchase, Defendant manufacturers and retailers have and continue to actively misrepresent the amount of active SAMe contained in the product's non-coated capsules, as well as conceal the existence and nature of the above-described manufacturing defects, thereby causing Plaintiff and putative class members economic injury.

7.      Plaintiff alleges that Defendants Vitamins Because, CT Health, and Azorio are liable to Plaintiff and putative class members for damages, including the cost of purchase of the subject product under their respective false labels, and other damages under the law.

## **PARTIES**

8.      Plaintiff Cori Ann Ginsberg brings this action in an individual capacity and on behalf of all others similarly situated. Plaintiff Ginsberg is an adult individual who at all relevant times has resided in North Miami, Florida, in the Southern District of Florida. On or about June 22, 2016, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale by and under the private label brand retail name of "We Like Vitamins" on Amazon.com for a purchase price of $39.99.[7] On or about November 1, 2016, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of "Naturetition Supplements" and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $21.99.  On or about October 11, 2017, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of "Naturetition Supplements" and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.  On or about January 30, 2018, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of "Naturetition Supplements" and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.  On or about May 21, 2018, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under the private label brand retail name of "Naturetition Supplements" and sold by the "Earth Natural Supplements" seller account on Amazon.com for a purchase price of $27.99.  On or about September 20, 2018, Plaintiff Ginsberg viewed the label of and purchased one bottle of the subject product as it was available for sale under private label brand retail name of "NusaPure"

---

[7] The purchased product from We Like Vitamins was listed on Amazon.com as Sam-e 500mg, 90 capsules, SAM e S-Adenosyl Methionine Supplement – Max Strength.

on Amazon.com for a purchase price of $34.99.[8] The products were all shipped by Amazon to her residence in North Miami, Florida. Plaintiff Ginsberg intends to continue to shop on online, the Amazon website, and various pharmacies and outlets, including for purposes of purchasing SAMe dietary supplements, and may in the present or future, as a reasonable consumer acting reasonably under the circumstances, knowingly or unknowingly, purchase the defective and false and deceptively labeled subject product from one of the numerous private labels who sell the subject product but do not display on their label or disclose to consumers the identity of their SAMe manufacturer.

9.      Defendant Vitamins Because is a manufacturer and seller to consumers and companies of over 1300 vitamins and nutritional supplements with a principal business location at 1832 S Dimensions Terr, Homosassa, FL 34448. As part of their operations, Defendant Vitamins Because operates a manufacture facility and vitamin store in Homosassa, Florida, as well as the websites of https://vitaminsbecause.biz/ and https://vitaminsbecause.us/, in order to sell their vitamins and nutritional supplement products directly to consumers, as well as manufacture their products for hundreds of independent companies. As part of its private label business whereby Defendant Vitamins Because specifically markets, manufactures and sells its products in bulk to independent retail companies (who in turn resell the products to consumers via Amazon.com and/or other retail avenues), Defendant Vitamins Because often designs, prints, and places custom logos and labels (including all nutritional facts) for independent retailers on their purchased stock of product bottles so the subject product can then be sold to consumers under the independent companies' private label on Amazon.com and/or other commercial retail avenues. Defendant

---

[8] The purchased NusaPure product was listed on Amazon.com as Sam-e 1500mg, 180 capsules, SAMe S-Adenosyl Methionine Supplement.

Vitamins Because works in conjunction with Defendant CT Health to manufacture and/or sell vitamins and nutritional supplements, and operates as the alter ego of Defendant CT Health.

10.   Defendant CT Health is a vitamin and nutritional supplement retail seller with its principal place of business located at 3930 S Suncoast Blvd, Homosassa, FL 34448. The entity also sells vitamins and nutritional supplements to consumers on the internet through their owned and maintained website of http://www.doctorvitaminstore.com/.

11.   Defendant CT Health works in conjunction with Defendant Vitamins Because to manufacture and/or sell vitamins and nutritional supplements, and operates as the alter ego of Defendant Vitamins Because.

12.   Defendant Azorio is an independent company which sells vitamins and nutritional supplements on Amazon.com, including the subject product SAMe, under various private label brand names, including (but not necessarily limited to) Naturetition Supplements, PureControl Supplements, and Earth Natural Supplements. Azorio maintains a principal place of business at 333 Kendall Drive, Marco Island, Florida 34145.

## JURISDICTION AND VENUE

13.   This Court has jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The aggregated claims of the individual class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and the number of putative class members are at least one hundred (100). This is a class action in which some of the class members are citizens of states different from the Defendants.

14.   This Court has personal jurisdiction over Defendants in that Defendants engage in business and actively place and/or facilitate the placement of products, including the subject product, into a stream of commerce in the State of Florida, including within the boundaries of this judicial district, and have sufficient minimum contacts in Florida; and otherwise intentionally avail

themselves of the markets within Florida through promotion, sale, marketing and/or distribution of products to render the exercise of jurisdiction by this Court proper and necessary. This Court has personal jurisdiction over Defendants as the manufacture and labeling of the subject product and substantial parts of the events giving rise to this action's claims occurred in Florida.

15.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Plaintiff Ginsberg at all relevant times resided in this District and Defendants conduct relevant business and activities in this District. Moreover, a substantial part of the events giving rise to Plaintiff Ginsberg's claim, including her order and purchase of the subject product, occurred in this District.

## FACTUAL BACKGROUND

16.     SAMe is an amino acid derivative normally synthesized in the body that may become depleted with sickness or age. Supplementing one's diet with SAMe and other vitamins and supplements has been found to be an effective way to overcome this deficiency. Some people have received medical recommendations from doctors to take up to 1600 milligrams ("mg") of SAMe a day in the form of over-the-counter SAMe supplements.

17.     SAMe in the human body is naturally concentrated in the liver and brain, and is a major methyl donor in the synthesis of hormones, nucleic acids, proteins, and phospholipids, and catecholamines and other neurotransmitters. SAMe is required for the synthesis of norepinephrine, dopamine, and serotonin, all important brain and body functions.[9] SAMe also facilitates glutathione usage which improves the body's antioxidant defense and helps maintain acetylcholine levels which are necessary for cognitive function.[10]

---

[9] SAMe's ability to boost brain cell methylation facilitates youthful DNA enzymatic actions which may help account for SAMe's mood-elevating properties. These enzymatic reactions are required for the healthy conversion of neurotransmitters such as serotonin and dopamine.

[10] A report published in Germany indicates that SAMe may help maintain healthy neurological function. The report revealed that: a) SAMe increased glutathionelevels by 50% and glutathione enzyme activity by 115%; b) SAMe decreased a measurement of free radical activity by 46%; and c) SAMe inhibited lipid peroxidation by 55% in culture.

18.     Although SAMe has been available to consumers in the U.S. market since the 1990s as a dietary and/or nutritional supplement, researchers continue to discover impressive benefits of SAMe. Most basically, research has long shown that SAMe helps maintain stable mood[11] and joint function without side effects.[12] As a result, it is regularly recommended by doctors for treatment of serious conditions of depression and arthritis. Moreover, because aging people often suffer joint discomfort and immobilization, SAMe supplementation addresses multiple problems people face as they grow older.

19.     In addition, research has shown that SAMe has multiple mechanisms of action that are used throughout the body, especially in the liver, where it functions to help maintain liver health. In particular, SAMe has multimodal mechanisms of action that are used in the liver and other parts of the body. Moreover, in order to perform its detoxification role, the liver continually performs large numbers of complex enzymatic reactions. SAMe facilitates healthy methylation enzymatic processes and boosts hepatic levels of glutathione, a critical antioxidant. When liver function is compromised, glutathione is depleted, which leads to free radical damage. In addition, SAMe acts as a methyl donor in the synthesis and formation of phosphatidylcholine and L-cysteine, both necessary for maintaining liver health. Thus, although largely known for its facilitation of optimal moods, SAMe has also shown benefits for the liver, brain, and joints.

20.     SAMe supplements sold in the U.S. market are typically manufactured in the form of enteric coated tablets, containing the active ingredient of SAMe as bound together in a stabilized salt form, known as s-adenosyl-methionine tosylate disulfate, and combined with non-active, stabilizing ingredients. The tablets are manufactured in a controlled environment and overlaid with

---

[11] A recent study conducted at Harvard Medical School and Massachusetts General Hospital cited the benefits of SAMe for mood elevation.

[12] In 2002, an agency of the U.S. Department of Health and Human Services conducted a meticulous evaluation of SAMe. Its findings show the efficacy of SAMe in helping to maintain stable mood and joint function without any side effects.

enteric coating. The enteric coating is necessary both to protect the SAMe and slow its physical and chemical decomposition, and, more importantly, to protect the body's upper gastrointestinal tract during the supplements' digestion from an early release of the product's contained acid and ensure the SAMe's proper and intended absorption in the body's intestines.

## SUBSTANTIVE ALLEGATIONS

21.     Defendants Vitamins Because and/or CT Health manufacture and sell over 1,300 types of vitamins and nutritional supplements, including the subject product non-coated SAMe dietary supplement capsules. Vitamins Because and/or CT Health's websites tout the quality of their products and further represents that Vitamins Because guarantees every product that it sells. Vitamins Because and/or CT Health further guarantee that, upon return of the remainder of the product, they will provide refunds for the unused portion of the product within one year for any product they sell which customers are not completely satisfied.

22.     Unlike most other SAMe supplements sold in the U.S. consumer market, the subject product manufactured by Vitamins Because and/or CT Health is made in capsule form, combining s-adenosyl-methionine tosylate disulfate with gelatin[13] and rice powder[14]. The subject product capsules are defectively designed, manufactured, and/or processed in that they do not contain any outer coating. The product's defective design, manufacture, and/or processes include a lack of enteric coating customarily overlaid on SAMe supplement tablets throughout the industry in order to ensure against their early release of acid in the body's upper gastrointestinal tract during digestion and premature absorption until reaching the body's intestines. In fact, Vitamins Because and/or CT Health's websites claim that the capsule form was chosen over the more common tablet form in order to attain fast absorption.

---

[13] Gelatin can be used by manufacturers to form a capsule for dietary supplements.
[14] Rice powder can be used by manufacturers as a flow agent.

23.     By pre-release data and laboratory examination and testing, company and industry-wide knowledge of the chemical nature of SAMe and design specifications in manufacturing its supplement form, company quality control operations and material reviews, and consumer complaints on Amazon.com webpages and other internet sites, Defendants Vitamins Because, CT Health, and Azorio have been on actual and/or constructive notice that the subject product lacks the represented amount of SAMe and SAMe potency; is defectively designed, manufactured, and processed; and not fit for its intended purpose for use as a SAMe dietary supplement. Despite their knowledge, Defendants failed to disclose to Plaintiff and her putative classes the true quality and quantity of the subject product and actively concealed the existence and nature of its defects and its substantially reduced SAMe potency at the time of manufacture, purchase, and thereafter. Defendants have not recalled the sold bottles of the subject product and have continued to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes while knowing of its substantially reduced SAMe potency.

<u>Defendant Vitamins Because</u>

24.     The subject product is manufactured by Vitamins Because and then sold to consumers for personal use as a dietary supplement under the Vitamins Because private label at their physical store locations in Florida, as well as through Vitamins Because's retail website -- https://vitaminsbecause.biz/. Consumers purchase the subject product from Vitamins Because's retail website in bottles with quantities of either 90 or 180 capsules. The purchased subject product is shipped to consumers in sealed blue bottles with white caps, each containing either 90 or 180 capsules, and has been priced at $39.99 or $59.99, respectively.

25.     Consumers may purchase multiple bottles of the subject product from Vitamins Because's and/or CT Health's retail websites. Many independent companies and stores also purchase large bulk quantities of bottles of the subject product with Vitamins Because's private

label from the Vitamins Because and/or CT Health websites at what the websites represent to be wholesale prices in order to resell the bottles individually to consumers at higher retail prices.

26.     The bottles of the subject product sold by Vitamins Because and/or CT Health from their retail websites contain Vitamins Because's own private label. The front of the label includes Vitamins Because's private logo (with the words "VITAMINS BECAUSE YOU ARE WORTH IT"), and states in large print "SAM-e," "S-Adenosyl-L-Methionine Disulfate Tosylate," and "1500 mg," "1000 mg," "400 mg," or "200 mg," and the number of contained capsules. Depictions of the front side of the label for bottles of the subject product containing 90 and 180 capsules in some of its permutations are displayed in Exhibit A. The back and/or sides of the label provide "Supplement Facts" representing the stated number of mg of SAM-e (as S-Adenosyl-L-Methionine Disulfate Tosylate) are included in each serving. Some Vitamins Because labels define a serving size as 1 capsule, 3 capsules, or 4 capsules. Examples of the represented "Supplement Facts" on the back and/or sides of the Vitamins Because labels, in some of its permutations, are depicted in Exhibit A. The back and/or sides of the label also provide directions for usage, ingredient information, and a warning for pregnant or nursing women and those taking medications or planning a medical procedure. These representations on the back and/or sides of the Vitamins Because labels are also depicted in Exhibit A.

27.     At the time of purchase, Vitamins Because and/or CT Health, by and through their private labels on bottles of the subject product and/or its retail website, have and continue to represent to consumers that the subject product capsules included in their subject product bottles with the Vitamins Because private label contain 1500 mg of SAMe per serving, and 500 mg (where a serving size is defined as 3 capsules) or 375 mg (where a serving size is defined as 4 capsules) of SAMe per capsule. These representations are depicted in Exhibit A.

28.     In recent months, Vitamins Because and/or CT Health, by and through new private labels on bottles of the subject product and/or its retail website, have and continue to represent to consumers that the subject product capsules included in their subject product bottles with the Vitamins Because private label contain 200 mg, 400 mg, and/or 1000 mg of SAMe per serving, and 200 mg or 250 mg of SAMe per capsule. These representations are depicted in Exhibit A.

29.     At the time of purchase, Vitamins Because and/or CT Health, by and through their private label on bottles of the subject product and/or their retail website, have and continue to communicate to consumers that the subject product is in good condition and fit for its intended use as a dietary supplement as labeled. These representations are depicted in Exhibit A.

30.     The SAMe capsules included in the subject product bottles with the Vitamins Because private label have not and do not contain the stated amounts of milligrams of SAMe per serving and per capsule. In fact, the included subject product capsules have been manufactured to contain only a small fraction of the represented amount of active SAMe milligrams per serving, and less than 150 mg[15] of active SAMe per capsule.[16] Accurate measures of the amount of active SAMe contained in the subject product are not disclosed on the Vitamins Because private labels.

31.     The same subject non-coated SAMe dietary supplement capsules are sold by Vitamins Because and/or CT Health to independent private label companies through their private label website -- https://vitaminsbecause.us/. Private label companies purchase large wholesale quantities of the subject SAMe product from Vitamins Because typically with their own private label on the purchased product bottles for further retail sale through various commercial retail

---

[15] Many subject product SAMe capsules manufactured and labeled by Vitamins Because and/or CT Health contained far less than 150 milligrams ("mg") of active SAMe per capsule, including some containing as little as 15.9 mg of active SAMe per capsule.
[16] Representations of milligrams of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

outlets, including, but not limited to, the Amazon.com website. Vitamins Because and/or CT Health have and continue to sell the subject product to private label companies with knowledge and/or intent that the subject product will reach U.S. consumers through various online or in-store commercial retail outlets.

32.    Private label companies have and continue to purchase the subject product from Vitamins Because's private label website in packages of 12, 100, or 500 bottles containing 90 or 180 capsules. The purchased subject product bottles are typically the same sealed blue bottles with white caps sold directly to consumers on Vitamins Because's and/or CT Health's retail website. Each bottle in the 12, 100, or 500 bottle packages contain either 90 or 180 capsules. In the past, the 12, 100, or 500 bottle packages containing 90 capsules per bottle have been priced at $160.99, $1,323.99, and $6,615.99, respectively. In the past, the 12, 100, or 500 bottle packages containing 180 capsules per bottle have been priced at $239.99, $1,999.99, and $9,948.99, respectively.

33.    The subject product bottles sold by Vitamins Because and/or CT Health from their private label websites are typically shipped to private label companies containing the ordering companies' own private labels and logos. Upon information and belief, the private label companies' "custom" labels and logos are typically selected, ordered, and purchased by a company from Vitamins Because's portfolio of stock labels and logos. Each "custom" label and logo design is available for sale on their private label website for a one-time charge of $49.99 per label and $49.99 per logo. In selecting a label and logo, Vitamins Because works collaboratively with many private label companies to design and create the labels and logos according to their preferences, even allowing the companies to select up to five font choices and three revisions in the designing of their labels and logos. These private label companies are also in contact with Vitamins Because and/or CT Health to communicate regarding what information Vitamins Because and/or CT Health should include on their private labels.

14

34.     After the order and payment for a label and logo is remitted, the purchased label and logo is then removed from Vitamins Because's website listing and becomes the exclusive possession of the purchasing private label company to be used by Vitamins Because for the labeling of wholesale stock of bottles of vitamins and dietary supplements purchased by that private label company from the Vitamins Because website. When fulfilling that private label company's orders, Vitamins Because then places the company's custom label they collaboratively designed and made for them on their ordered dietary supplement bottles. Vitamins Because thus designs, creates, manufactures, and attaches the labels to the private label bottles of many independent companies selling vitamins and nutritional supplements manufactured by Vitamins Because and/or CT Health, including the subject product. Vitamins Because and/or CT Health have and continue to design, create, manufacture, and attach the private labels of private label companies to the subject product bottles with knowledge and/or intent that those private labels will be viewed by U.S. consumers in the context of online and/or in-store retail consumer purchasing.

35.     At the time of purchase, Vitamins Because and/or CT Health and the private label companies[17], by and through many companies' private labels on bottles of the subject product which are designed, created, manufactured, and attached to the subject product bottles by Vitamins Because and/or CT Health in conjunction with the private label companies, and those companies' retail webpages on Amazon.com and/or other websites, have and continue to represent to consumers that the subject product capsules included in the subject product bottles with the private labels contain 200, 400, 500, 1000 or 1500 mg of SAMe per serving, and 200, 250, 375, 400, or 500 mg of SAMe per capsule.

---

[17] These companies include, but are not limited to: We Like Vitamins, Gmax Central LLC (under the brand "NusaPure"), aSquared, Inspire Now Pty Ltd (under the brand "BoostCeuticals"), Healthy Way (under the brands "Healthy Way Rx" and "Nasa Be'Ahava"), and Jolly Dollar Supply Company LLC (under the brand "Mental Refreshment").

36.     At the time of purchase, Vitamins Because and/or CT Health and the private label companies, by and through many companies' private label on bottles of the subject product which are designed, created, manufactured, and attached to the subject product bottles by Vitamins Because and/or CT Health in conjunction with the private label companies, and those companies' retail webpages on Amazon.com and/or other websites, have and continue to represent to consumers that the subject product is merchantable, in good condition, and fit for its intended use as a dietary supplement as labeled.

37.     Under some circumstances, some private label companies, including Defendant Azorio, alternatively have and continue to purchase the subject product from Defendant manufacturers and then arrange for the product's packaging and labeling for consumer resale under their own private labels and logos through other means. These private label companies, through their private labels, have and continue to similarly represent to consumers, based on the representations of Defendant manufacturers, that the subject product capsules included in the subject product bottles with the private labels contain 200, 400, 500, 1000 or 1500 mg of SAMe per serving, and 200, 250, 375, 400, or 500 mg of SAMe per capsule. These private label companies, through their private labels, have and continue to similarly represent to consumers, based on the representations of Defendant manufacturers, that the subject product is merchantable, in good condition, and fit for its intended use as a dietary supplement as labeled.

38.     Defendant manufacturers have and continue to underfill the subject product SAMe capsules with an insufficient amount of active SAMe, far below the represented measures of the amount of SAMe, and misrepresent to those who purchase the subject product from them, including both consumers and private label companies, like Azorio and its managing members, the true amount of SAMe which is present in the subject product capsules.

16

39.     Thus, the SAMe capsules included in the subject product bottles with private labels have not and do not contain the stated amounts of milligrams of SAMe per serving and per capsule. In fact, the included subject product capsules contain only a small fraction of the represented amount of active SAMe milligrams per serving, and less than 150 mg[18] of active SAMe per capsule.[19] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on the private labels. Moreover, because of its defective nature and low and overstated measure of SAMe potency, the subject product is not a merchantable SAMe supplement or otherwise fit for its intended use as a dietary supplement as labeled.

40.     The subject product sold under various retail labels share common manufacturing defects and deficiencies. Moreover, because of the common design and manufacture of the subject product as sold under all retail labels, including their impotent state and/or minimal amount of active SAMe, all subject product in the market is similarly mislabeled and deceptively advertised.

<u>Online Sales</u>

41.     Private label companies, including Defendant Azorio, sell bottles of the subject product with their own private labels to the consumer public through commercial outlets such as Amazon.com and/or their own private websites.

42.     Pictures of the subject product labels and/or the information contained on the subject product labels are purposely made available to consumers on Amazon.com webpages and all other online venues of sale by sellers prior to their online purchase of any of the privately

---

[18] Many subject product SAMe capsules sold under private label brands contained far less than 150 mg of active SAMe per capsule, including some containing as little as 15.9 mg of active SAMe per capsule.
[19] Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

labeled subject product. Consumers, including Plaintiff and putative class members, in all circumstances of purchase, whether online or in a store, have and continue to view the contents of the subject product labels before making their purchase decision and payment for the subject product.

Azorio

43.     Azorio sells the subject product to consumers online, through one of its seller accounts on Amazon.com. This includes (but may not be limited to) the accounts of Earth Natural Supplements (Seller ID: ANAL58EVMKY7H) and GOLDANDSTONES – SUPPLEMENTS (Seller ID: A2QZY8BV8FU3RW).

44.     Pictures of the subject product labels and/or the information contained on the subject product labels are made available to consumers on Amazon.com webpages prior to their online purchase of any of the privately labeled subject product. Consumers, including Plaintiff and putative class members, in all circumstances of purchase, whether online or in a store, have and continue to view the contents of the subject product labels, including the stated amount of SAMe, before making their purchase decision and payment for the subject product.

45.     The subject SAMe product sold by Azorio on Amazon.com to the consumer public is sealed and packaged in bottles containing one of its private labels. Azorio's private labels include (but may not be limited to): Naturetition Supplements, PureControl Supplements, and Earth Natural Supplements.

46.     Azorio selected, ordered, created, designed and/or purchased their private labels and logos. In establishing its labels and logos, Defendant worked to craft the label design and the included claims to convey its intended messages to consumers.

47.     The front of the Naturetition SAMe private label includes Naturetition's private logo (with the name "NATURETITION supplements") and states in large print "SAM-e" and

18

"1500 mg[20]," and includes a label icon with the words "ALL NATURAL." The front of the label also states that the subject product contains "No Artificial Ingredients," "Binders," "Fillers," "Sugar," "Gluten," "Milk." The side of the label also indicates that the bottle contains 90 or 180 capsules of dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the Naturetition private label are displayed in Exhibit B. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 3 capsules. The "Supplement Facts" on the back and/or sides of the Naturetition private labels are also depicted in Exhibit B. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

48.     The front of the PureControl private label SAMe includes PureControl's private logo (with the name "PureControl Supplements") and states in large print "SAM-e" and "1500 mg."[21] The front of the label also states that the subject product contains "No Additives" and "No Preservatives." The side of the label also indicates that the bottle contains 90 or 180 capsules of the dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the PureControl private label are displayed in Exhibit C. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 2 capsules. The

---

[20] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

[21] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

"Supplement Facts" on the back and/or sides of the PureControl private labels are also depicted in Exhibit C. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

49.     The front of the Earth Natural private label SAMe includes Earth Natural's private logo (with the name "Earth Natural Supplements") and states in large print "SAM-e" and "1500 mg."[22] The front of the label also states that the subject product is "Premium Quality," "100% Natural," and "Additives Free." The side of the label indicates that the bottle contains 90 or 180 capsules of the dietary supplement as included. Depictions of the front side of the label for bottles of the subject product with the Earth Natural private label are displayed in Exhibit D. The back and/or sides of the label provide "Supplement Facts" representing that 1500 mg of SAM-e (as adenosyl-methionine-disulfate tosylate) are contained "Per Serving," where a serving size is defined as 3 capsules. The "Supplement Facts" on the back and/or sides of the Earth Natural private labels are depicted in Exhibit D. The back and/or sides of the label also provide directions for usage and warnings regarding children, a damaged or missing product seal, and the product's use by pregnant or nursing women, and those taking medications.

50.     The subject product sold by Azorio under various private labels has not and does not contain the above stated amounts of milligrams of SAMe per serving and per capsule as represented by their respective private labels. In fact, the subject product's SAMe capsules contain less than 25% of the represented amount of active SAMe milligrams per serving, and less than 150

---

[22] Representations of milligrams ("mg") of SAMe on SAMe supplement labels of brands throughout the industry represent the amount of active SAMe contained therein, as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

mg[23] of active SAMe per capsule.[24] Accurate measures of the amounts of active SAMe contained in the subject product are not disclosed on the private labels of the SAMe product sold by Azorio.

51.    The subject product sold by Azorio under its various private labels have and continue to be manufactured and packaged in the same manner. Accordingly, all subject product sold by Azorio contain the same design, manufacture, and/or processing, and approximately the same defective amount of SAMe. All subject product sold by Azorio under the Naturetition, PureControl, and Earth Natural and other private labels is without any industry-standard outer coating.

52.    By pre-release data and laboratory examination and testing, company and industry-wide knowledge of the chemical nature of SAMe, mandatory design specifications and quality control operations and material reviews in the manufacturing, packaging, labeling, and holding operations for the subject product, and/or online complaints on Amazon.com webpages, Azorio has been on actual and/or constructive notice that the subject product lacks the represented amount of SAMe and SAMe potency and not fit for its intended purpose for use as a SAMe dietary supplement, and falsely labeled as described above. Despite its knowledge, Azorio has and continues to mislabel its subject product bottles and fail to disclose to the consumer public,

---

[23] Many subject product SAMe capsules sold under private label brands contained far less than 150 mg of active SAMe per capsule, including some containing as little as 15.9 mg of active SAMe per capsule.

[24] The "Supplement Facts" section on Naturetition, PureControl, and Earth Natural private labels expressly state that the represented amount of 1500 mg is of SAM-e (as adenosyl-methionine-disulfate-tosylate). Even assuming the stated amount of 1500 mg connotes the amount of S-Adenosyl-L-Methionine Tosylate Disulfate, the salt form containing within it active SAMe, and not the amount of active SAMe itself, the label is still grossly mislabeled. Even under this reading of the label, the included subject product capsules still contain only a fraction of the represented amount of S-Adenosyl-L-Methionine Disulfate Tosylate per serving. Representations of milligrams ("mg") of SAMe on SAMe Supplement labels of brands throughout the industry, however, typically represent the amount of *active* SAMe contained therein (usually per tablet), as would be relevant and useful to consumers looking to maintain a prescribed dosage of SAMe supplementation.

including Plaintiff and her putative classes, the true and accurate supplement facts regarding the amount and nature of the SAMe contained in its subject product. Similarly, Azorio also has and continues to actively conceal the true amount of SAMe at the time of purchase and thereafter. Azorio has not recalled the sold bottles of the subject product and continues to sell the subject product representing it to be a quality SAMe supplement fit for its intended health purposes as represented by its private labels.

Deceptive Practices

53.     The acts, practices, and product labeling of Defendant manufacturers and retailers have and continue to be materially deceptive and misleading. The false product labeling of the subject product has and continues to deceive and mislead consumers into believing that the subject product contains high amounts of SAMe which greatly exceed the subject products' actual SAMe content. The amount of SAMe contained in a SAMe supplement is its most distinguishing feature and a significant purchase motivator for purchasers of such supplements.

54.     Defendant manufacturers and retailers knew and know, or should know and should have known, that the subject product is and has not been accurately labeled and grossly overstates the amount of SAMe manufactured into the subject product's capsules and stated serving sizes. Knowledge of the false labeling and its gross overstatement of included SAMe was easily attained by Defendant manufacturers' and retailers' scientific knowledge of SAMe, its biological functions, and its tosylate disulfate salt form; knowledge of the SAMe controlled manufacturing process and consumer dietary supplement industry; knowledge regarding the manufacturing and ingredients included in the specific subject product, including capsule weight[25]; internal pre-release laboratory

---

[25] The entity fill weight of the subject product capsules has often approximated only 500-600 mg, making the inclusion of represented amounts of 375-500 mg of active SAMe per capsule (when considered along with the necessary amount of s-adenosyl-methionine tosylate disulfate needed to maintain that amount of active SAMe and the minimal amount of filler material (*e.g.,* gelatin and rice powder) necessary for capsule formation) a manufacturing/structural impossibility.

acceptance and release testing and quality control measures; and online consumer complaints and feedback.[26]

55.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently misrepresented to consumers the amount of active SAMe contained in the subject product by actively mislabeling the subject product with false and grossly overstated representations of the amount of SAMe included in the supplement's capsules and serving sizes.

56.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently misled purchasers and consumers into believing they were securing with their purchase of the subject product a value purchase of fully effective, non-defective SAMe supplement, containing the stated amounts of SAMe.

57.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently advertised and/or represented the subject product to consumers with material omissions and active concealment of material facts. The material omissions by Defendant manufacturers and retailers include failure to disclose on the subject product labels the accurate measure of active SAMe included in each included capsule, as is required on product labels of SAMe supplements. An accurate measure of the amount of active SAMe included in each capsule is material information which any reasonable consumer would need to know in the context of purchasing SAMe supplements in order to make a reasonably informed purchase decision. Particularly with the subject product, where each included SAMe capsule contains significantly less active SAMe per capsule as compared with many SAMe supplement tablets available to U.S. consumers online and sold throughout the industry, accurate disclosure of the amount of included active SAMe is both material and necessary for consumers. In fact, many SAMe supplements sold in the consumer

---

[26] Online consumer complaints on Amazon.com webpages and elsewhere include complaints of the subject product's ineffectiveness as a SAMe supplement, deceptive labeling, etc.

market contain 200 or 400 mg of active SAMe per tablet, and Defendant manufacturers' and retailers' nondisclosure of the accurate amount of active SAMe contained in the subject product has and continues to be materially deceptive to reasonable consumers expecting their purchased SAMe supplement to contain a higher amount per capsule. Moreover, because SAMe supplements sold in the consumer market contain labels which accurately disclose the amount of active SAMe contained within the labeled SAMe supplement, reasonable consumers expect accurate disclosure of this information, and have and continue to be deceived as to the quality and quantity of the SAMe contained in the subject product they purchased without such disclosure.  Moreover, clear and accurate disclosure of the amount of active SAMe contained in each capsule is material and necessary to consumers as reasonable consumers purchase SAMe supplements in an effort to consume a prescribed or recommended amount of SAMe supplementation as prescribed by their doctors or medical professionals which can only be maintained with clear and accurate disclosure of SAMe amounts on the subject product labels and web retail postings.

58.     The material omissions by Defendant manufacturers and retailers also include their failure to disclose to consumers, including Plaintiff and her putative classes, that the subject product was defectively designed, manufactured, and/or processed as detailed herein. Defendant manufacturers and retailers failed to disclose to consumers, including Plaintiff and her putative classes, that the subject product lacks the proper enteric coating, a feature which is key to most SAMe supplement's proper bodily absorption.

59.     Defendant manufacturers and retailers intentionally, recklessly, and/or negligently engaged in deceptive and misleading acts by devising misleading and deceptively manipulated serving sizes (i.e., x number of capsules per serving) whose true amounts of active SAMe do not correlate to proper dosages of SAMe which are typically recommended by the medical profession or used in the SAMe supplement industry. These manipulated serving sizes (i.e., ranging from 1

to 4 capsules) which are printed on the subject product labels in their "Supplement Facts" section are represented to consumers as typical serving sizes, and assumed to provide consumers with an amount of SAMe typically expected from a serving of a SAMe supplement in the supplement industry. In reality, the subject product labels grossly overstate the amount of active SAMe present in every serving. As a result, the actual amount of SAMe present in the printed serving sizes (i.e., x number of capsules per serving) bear no correlation to any recommended amount of SAMe to be supplemented in one's diet on a regular basis. Such manipulation of serving sizes misleads consumers into believing that by consuming the stated serving size they are receiving a proper and typical dosage amount of SAMe, when they are, in fact, receiving a different (and far less) amount of the active SAMe they seek.

Injury

60.    Plaintiff and her putative classes have been economically injured as a result of Defendant manufacturers' and retailers' deceptive acts, practices and false labeling. The subject product's deceptive labels, which Plaintiff and the putative classes of consumers viewed online or in person prior to their purchase and which communicated false information and failed to disclose material information about their defective nature, caused them to decide to purchase the subject products over other available accurately labeled and non-defective SAMe supplements on the market.

61.    Plaintiff and putative class members acted reasonably in relying on Defendant manufacturers' and retailers' misrepresentations and omissions, the truth of which they could not have reasonably discovered.

62.    Plaintiff and putative class members have been injured by Defendant manufacturers' and retailers' illegal and deceptive acts in the entire amount of the purchase price they paid for the subject products which were worthless and unfit for their intended purpose as a

SAMe supplement because the subject product capsules were defective, unsafe for consumption, and severely lacking in a requisite amount of active SAMe for a dietary supplement of its kind.

63.     As a result of Defendant manufacturers' and retailers' illegal and deceptive practices, Plaintiff and putative class members did not receive the benefit of their bargain or the value of their purchase in their purchases of the subject product.

64.     Plaintiff and putative class members relied upon Defendant manufacturers' and retailers' false and deceptive labeling and material omissions in choosing to purchase the subject product. Had Plaintiff and putative class members known that the subject product was falsely and deceptively labeled, and defective in its manufacturing, they would not have paid the purchase price and/or purchased the subject product. The Defendant manufacturers' and retailers' false and deceptive labeling and material omissions caused Plaintiff and putative class members to purchase the subject product over other available SAMe supplements sold on the market. Had Plaintiff and putative class members never viewed the subject products' deceptive and misleading labels, they would not have been misled to believe that the subject products contained in the range of 200-500 mg of SAMe per capsule, and would not have been injured as they were from having selected and purchased the subject products at any purchase price.

65.     Through their falsely stated SAMe quantities and material omissions regarding the defective nature of the included SAMe capsules, Defendant manufacturers and retailers misled consumers, including Plaintiff and putative class members, into purchasing the subject product with the false belief that they were securing a value purchase for industry standard and/or effective SAMe supplements containing the stated quantities of SAMe. In fact, far from receiving a value purchase with the amount of SAMe printed on the subject products' labels, consumers, including Plaintiff and the putative classes, purchased a product which, because of its minimal quantity of active SAMe and defective nature, was without the stated quantities of SAMe and unfit for its

intended use as a SAMe supplement, and thus of no value to consumers. Moreover, far from receiving a purchase of the represented value, consumers, including Plaintiff and the putative classes, were misled into purchasing a product of no value whose use could lead to significant injury from its premature release of acid in the digestive track, as well as from the lack of proper SAMe dosage it provides, as purchasers typically rely on the accuracy of dietary supplement labeling to maintain a proper dosage of SAMe as recommended by their doctors and/or health professionals.

66.     The subject product's deceptive labels also caused Plaintiff and the putative classes to pay a premium or inflated price per milligram of active SAMe included in the subject product as charged by Vitamins Because and/or CT Health and the private label or commercial retailers for the subject product over other accurately labeled SAMe supplements in the market which charge lower prices per milligram for non-defective and accurately labeled SAMe supplements.

67.     Thus, the subject products' deceptive labels caused Plaintiff and the putative classes to pay a premium or inflated price to Defendants or other private label sellers for the subject product instead of purchasing another cheaper (as measured per milligram of active SAMe) and properly manufactured SAMe supplement. Had Plaintiff and putative class members never viewed the subject products' deceptive and misleading label, they would not have been misled into believing that the subject product contained in the range of 200-500 mg of SAMe per capsule, and would not have been injured as they were from having paid a premium or increased price for the small amount of active SAMe the subject product capsules actually contain. Moreover, had Plaintiff and putative class members never viewed the subject products' deceptive and misleading label, they would not have been misled into believing that the subject product contained properly manufactured, non-defective SAMe supplement, and would not have been injured as they were from having paid a premium or increased price for a defective SAMe consumer product.

27

68.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiff and putative class members to not receive the monetary value of their purchase. Plaintiff and putative class members received only a small fraction of the amount of SAMe which the subject product labels represented would be included in their purchase for the price they paid.

69.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiff and putative class members to overpay for defective SAMe supplements. Had the subject products' defects been revealed prior to the time of purchase, Plaintiff and putative class members would not have purchased the subject product or would have paid a lower purchase price for the subject product.

70.     Defendant manufacturers' and retailers' false and deceptive labeling also caused Plaintiff and putative class members to be deprived of the opportunity to buy and consume a proper dosage and/or recommended amount of SAMe. Because of the subject products' false and deceptive labels, Plaintiff and putative class members were led to believe they were consuming in the range of 200-500 mg of SAMe per capsule. They did not realize they were only consuming a small fraction of that amount of SAMe when consuming capsules of the subject product, and were thus deprived of the health benefits of a full and proper dosage.

## CLASS ACTION ALLEGATIONS

71.     Plaintiff brings this action on her own behalf and on behalf of all other persons similarly situated, pursuant to the Federal Rules of Civil Procedure 23(a)-(b), on behalf of classes consisting of persons who purchased the subject product. Excluded from the classes are Defendants, their officers and directors at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest, as well as any person, firm, trust, corporation, or other entity who purchased the subject product for resale.

72.     The classes which Plaintiff Ginsberg seeks to represent are defined as:

1)  All persons who purchased the subject product in or as a resident of the United States of America ("nationwide class").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased the subject product for resale; or any person who has an action for damages for personal injury or death or property damage against Defendants.

2)  All persons who purchased the subject product in or as a resident of the state of Florida ("Florida subclass").  The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased the subject product for resale; or any person who has an action for damages for personal injury or death or property damage against Defendants.

3)  All persons who purchased the subject product as sold under one of Azorio's private labels, including, but not limited to, the Naturetition, PureControl, and Earth Natural private labels, in or as a resident of the United States of America ("Azorio subclass"). The term "persons" includes individuals as well as profit and not-for-profit corporations, partnerships, limited liability companies, limited liability partnerships, joint ventures, sole proprietorships, associations, firm, trust and other business and governmental entities.

Excluded from this class are any persons or other entity related to or affiliated with Defendants; any person, firm, trust, corporation, or other entity who purchased the subject product as sold under one of Azorio's private labels for resale; or any person who has an action for damages for personal injury or death or property damage against Defendants.

29

## NUMEROSITY

73.     The members of the Classes are so numerous that joinder of all members is impracticable.  The Classes are made up of thousands of consumers. The precise number of Class members for the Classes can only be ascertained through discovery, which includes Defendants' sales records. The disposition of their claims through a class action will benefit all parties to this action and this Court.

## COMMON QUESTIONS OF LAW AND FACT

74.     There is a well-defined community of interest in the questions of law and fact involved which affect the Plaintiff and members of the Classes.

75.     The questions of law and fact common to the Classes predominate over questions which may affect individual members, and include, but are not limited to, the following:

(a)     Whether the subject product labels have and continue to contain false, deceptive and/or misleading representations regarding the amount of active SAMe contained in the subject product capsules;

(b)     Whether the subject product labels have and continue to contain deceptive, misleading, and/or manipulated serving sizes which induced consumers to purchase the subject product;

(c)     Whether the subject product is defective and unfit for purposes of its intended use as a SAMe supplement;

(d)     Whether the subject product labels have and continue to contain material omissions regarding the amount of active SAMe contained in the SAMe supplement contained therein;

(e)     Whether the subject product labels have and continue to contain material omissions regarding the defective nature of the subject product, and specifically its lack of enteric coating;

(f)     Whether Defendant manufacturers and retailers made material omissions to Plaintiff, putative class members, and the public concerning the content and safety of the product;

(g)     Whether reasonable consumers would be and/or were in fact deceived by Defendant manufacturers' and retailers' alleged false, deceptive and/or misleading representations;

(h)     Whether Plaintiff, putative class members, and reasonable consumers failed to receive the represented value of SAMe in their purchase of the subject product;

(i)     Whether Plaintiff, putative class members, and reasonable consumers paid an inflated price and/or price premium for the subject product and/or the amount of SAMe they received in their purchase;

(j)     Whether Defendant manufacturers and retailers violated Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201 through 501.213;

(k)     Whether Defendant manufacturers and retailers breached the subject product's implied warranty of merchantability, including whether the subject product contained sufficient amounts of SAMe pers serving and/or per capsule to qualify as a merchantable dietary supplement, fit for its intended purpose;

31

(l)     Whether the Defendant manufacturers' and retailers' representations online and on the subject product labels constitute express warranties and whether Defendant manufacturers and retailers breached such express warranties;

(m)     Whether Defendant manufacturers' and retailers' representations online and on the subject product labels constitute intentional or negligent misrepresentations;

(n)     Whether class members are entitled to actual, statutory, and/or punitive damages and if so, the appropriate amount thereof.

## TYPICALITY

76.     The claims of Plaintiff, as the representative Plaintiff, are typical of the claims of the classes because Plaintiff and members of the Classes were all subject to Defendant manufactures' deceptive sales practice in their purchases of the subject product. Plaintiff, like all class members, purchased bottles of the subject product which were intentionally false and deceptively labeled, defective, and unfit for their intended purposes as SAMe supplements.

## ADEQUACY OF REPRESENTATION

77.     Plaintiff, as the representative Plaintiff, will fairly and adequately assert and protect the interests of the Classes as:

(a)     Plaintiff has hired attorneys who are experienced in prosecuting class action claims and will adequately represent the interests of the Classes; and

(b)     Plaintiff has no conflict of interest that will interfere with the maintenance of this class action.

## PREDOMINANCE

78.     With respect to the Classes, questions common to the classes predominate over those which only affect individual purchasers of the subject product. This case involves Defendant

manufacturers' and retailers' deceptive practices in labeling of the subject product and sale of defective SAMe supplements. Liability will primarily be predicated upon the jury's evaluation of Defendant manufacturers' and retailers' sales, manufacturing, marketing, and labeling practices in regards to the subject product.

## SUPERIORITY

79.     A class action provides a fair and efficient method for the adjudication of this controversy for the following reasons:

(a)     The common questions of law and fact set forth herein predominate over any questions affecting only individual Class members;

(b)     The Classes are so numerous as to make joinder impracticable.  The Classes, however, are not so numerous as to create manageability problems.  There are no unusual legal or factual issues which would create manageability problems;

(c)     Prosecution of a separate action by individual members of the Classes would create a risk of inconsistent and varying adjudications against Defendants when confronted with incompatible standards of conduct;

(d)     The claims of the individual Class members are small in relation to the expenses of litigation, making a class action the only procedure in which Class members can, as a practical matter, recover; and

(e)     A class action would be superior to and more efficient than adjudicating thousands of individual lawsuits.

**FIRST CAUSE OF ACTION**
**(Violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"))**
**(Fla. Stat. §§ 501.201, et seq.)**
**(Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)**

80.     Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

81.     Plaintiff assert this cause of action under Florida law.

82.     Plaintiff and her classes repeat and allege the allegations contained in paragraphs 1-79 of this complaint as if fully set forth herein.

83.     Plaintiff and class members who purchased the subject product are "consumers" under the FDUTPA.

84.     Defendant manufacturers' and retailers' practices, acts, policies and course of conduct violated FDUTPA in that:

(a)   Defendant manufacturers and retailers knowingly and willfully, negligently, and/or recklessly engaged in unfair, unconscionable, and deceptive acts and practices in or affecting commerce, through their false and deceptive labeling of the subject product, material omissions regarding the subject product's manufacturing and packaging defects, and material omissions regarding the true amounts of SAMe and serving sizes contained in the subject product capsules. Such pattern of conduct was uniform in nature with respect to the marketing and sale of the subject product.

(b)   Defendant manufacturers and retailers knowingly and willfully concealed, suppressed and consciously omitted material facts from Plaintiff and other members of the Classes knowing that consumers would rely on the subject

34

product bottle labeling and marketing and Defendant manufacturers' and retailers' uniform misrepresentations concerning the amount of SAMe contained in the subject product capsules and designated serving sizes.

85.     Defendant manufacturers' and retailers' acts and material omissions possessed the tendency or capacity to mislead or create the likelihood of deception.

86.     Plaintiff and putative class members relied upon Defendant manufacturers' and retailers' deceptive acts and material omissions in connection with their purchase of the subject product.

87.     To date, Defendant manufacturers and retailers have and continue to knowingly accept the benefits of their deception and improper conduct in the form of profits from the increased sale of the subject product.

88.     As a proximate result of the FDUTPA violations described herein, Plaintiff and class members: (a) purchased and consumed the subject product when they would not otherwise have purchased and consumed; (b) suffered economic losses consisting of the purchase price of the subject product or the value of represented SAMe not received, or, alternatively, the price premium they paid for the SAMe they received in the subject product; and (c) suffered and will suffer the loss of diminished dosages of SAMe supplementation.

89.     As a direct and proximate result of these deceptive commercial practices, Plaintiff and the members of the putative Classes have been injured and are entitled to recover actual damages to the extent permitted by law in an amount to be proven at trial.

90.     Plaintiff and putative class members seek actual damages, restitution of purchase costs, and civil penalties permitted by Fla. Stat. §§ 501.2075.

91.     Plaintiff and putative class members also seek appropriate equitable relief, including an order requiring Defendant manufacturers and retailers to adequately disclose and/or

remediate the subject product's defects, its true amount of active SAMe, accurate and reasonable supplement serving sizes as disclosed on supplement labels throughout the SAMe supplement industry, as well as an order enjoining Defendant manufacturers and retailers from further engaging in such mislabeling and material omissions in the future. Plaintiff and class members also seek attorneys' fees and any other just and proper relief available under FDUTPA.

**SECOND CAUSE OF ACTION**
**(Breach of Implied Warranties)**
**(Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)**

92.     Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio Subclass against Defendant Azorio.

93.     Plaintiff asserts this cause of action under Florida law.

94.     Plaintiff and her classes hereby incorporate by reference the allegations contained in paragraphs 1-79 of this complaint as though set forth fully herein.

95.     Defendant manufacturers and retailers are "merchants" and/or "sellers" with respect to the subject product and goods of that kind as defined under the Uniform Commercial Code ("UCC") and Fla. Stat. § 672.314.

96.     All bottles of subject product are "goods" as defined under the UCC.

97.     Defendant manufacturers and retailers impliedly warranted that the subject product is of a merchantable quality and fit for ordinary use as SAMe dietary supplement.

98.     Defendant manufacturers and retailers impliedly warranted that the subject product is of fair average quality within the provided description on product labels.

99.     Defendant manufacturers and retailers impliedly warranted that the subject product conforms to the representations and/or affirmations of fact made on the product labels.

36

100.    Defendant manufacturers and retailers impliedly warranted that the subject product capsules are of even kind, quality and quantity within each product bottle as labeled and among all similarly labeled subject product bottles sold.

101.    Defendant manufacturers and retailers breached their implied warranty because the subject product manufactured, labeled, and sold to Plaintiff and putative classes has and continues to not be of fair average quality as implied by the label representations and fails to conform to the representations and/or affirmations of fact made on the product labels due its inherent manufacturing defects, and minimal and insufficient amounts of active SAMe contained in the subject product capsules and designated serving sizes.

102.    Defendant manufacturers and retailers breached their implied warranty because the subject product manufactured, labeled, and sold to Plaintiff and putative class members has and continues to not be of a merchantable quality and/or fit for its intended use due its inherent manufacturing defects and minimal and insufficient amounts of active SAMe contained in the subject product capsules and designated serving sizes.  Moreover, subject product capsules within each product bottle as labeled and among all similarly labeled subject product bottles sold were not of the even kind, quality and quantity represented on the product labels.

103.    Plaintiff's and putative Class members' interactions with private label retailers suffice to create privity of contract between Plaintiff and putative Class members, on the one hand, and Defendant manufacturers and retailers, on the other hand; however, privity of contract need not be established nor is it required because, as consumers, Plaintiff and putative Class members are intended third party beneficiaries of contracts (including implied warranties) between Defendant manufacturers and the private label retailers, including Azorio, who sell the subject product to consumers. Defendant manufacturers' and retailers' implied warranty of

merchantability and fitness is designed for the benefit of consumers who purchase(d) the subject product.

104.    As a direct and proximate result of the breach of said warranties, Plaintiff and putative Class members were injured and are entitled to damages.

105.    Any attempt by Defendant manufacturers and retailers to disclaim or limit the implied warranty of merchantability *vis-à-vis* consumers is unconscionable and unenforceable. Specifically, Defendant manufacturers' and retailers' warranty limitations set forth online are unenforceable because Defendant manufacturers and retailers knowingly sold a defective and falsely and deceptively labeled product without informing consumers the subject product's defects and true amount of contained SAMe.

106.    Plaintiff and putative Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendant manufacturers' and retailers' conduct described herein.

107.    Defendant manufacturers and retailers were provided notice of these issues by complaints lodged by consumers and their knowledge regarding the subject product and its manufacturing.

## THIRD CAUSE OF ACTION
### (Breach of Express Warranty)
### (Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)

108.    Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

109.    Plaintiff asserts this cause of action under Florida law and Fla. Stat. § 672.313.

110.     Plaintiff and their classes hereby incorporate by reference the allegations contained in paragraphs 1-79 of this complaint as though set forth fully herein.

111.     Defendant manufacturers and retailers, directly or indirectly through their wholly owned agents or business partners, provided uniform affirmative misrepresentations about the subject product in their misleading advertising, marketing, and/or business communications, including the false and deceptive labeling of the subject product. The uniform capsules and the various affirmative descriptions made concerning the subject product, including various retail labels attached to bottles of the subject product (*see e.g.* Exhibits A-D), were made part of the basis of the bargain and thereby created an express warranty that the subject product conformed to the label descriptions pursuant to the UCC express warranty provisions adopted by Florida under Fla. Stat. § 672.313. Plaintiff and the classes thereby relied upon such warranties. By law, Plaintiff and their classes have entered into certain express warranty agreements with Defendant manufacturers and retailers.

112.     To the extent there were disclaimers, if any, they were not of a size, type, and location that would adequately inform a reasonable consumer that Defendant manufacturers' and retailers' representations alleged on the labels and online were not as represented.

113.     Had a putative Class member researched a private label retailer's SAMe brand online, he or she would have found the same or substantially similar false and/or deceptive supplement facts on private label websites and purchase webpages, which falsely reported inaccurate supplement information on par with the false and deceptive information printed on the subject product bottle labels.

114.     With the material affirmative misrepresentations and material omissions on all subject product label bottles, Defendant manufacturers and retailers breached their express warranties to Plaintiff and the classes when they manufactured, labeled and/or sold them subject

product consisting of uniformly defective and impotent SAMe supplement capsules that did not contain the represented amount of SAMe and that did not conform to the description of the SAMe supplement provided to them on the label and in other marketing sources.

115.    As a result of the foregoing, Plaintiff and her putative classes are entitled to compensatory damages for breach of express warranty in an amount to be proven at trial, and punitive damages because Defendant manufacturers and retailers acted in a manner contrary to public purpose and with intent to mislabel the subject product.

**FOURTH CAUSE OF ACTION**
**(Violation of the Magnusson-Moss Warranty Act ("MMWA"))**
**(15 U.S.C. §§ 2301 *et seq*.)**
**(Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)**

116.    Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida Subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

117.    Plaintiff asserts this cause of action under federal law and the MMWA, 15 U.S.C. § 2301(3).

118.    Plaintiff and their putative classes hereby incorporate by reference the allegations contained in paragraphs 1-79 and 92-115 of this complaint as though set forth fully herein.

119.    Plaintiff and putative Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

120.    The subject product purchased by Plaintiff and Class members under its various retail labels is considered a "consumer product" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

121.    Defendant manufacturers and retailers are "suppliers" and "warrantors" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

122.    This claim is being brought under Section 2310(d)(a) of the MMWA as a state cause of action over which this Court has supplemental jurisdiction which provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

123.    The subject products' implied warranties are accounted for under Section 2301(7) of the MMWA, and are warranties which Defendant manufacturers and retailers cannot disclaim, when they fail to provide merchantable goods.

124.    As set forth herein, Defendant manufacturers and retailers breached their implied and express warranties with Plaintiff and Class members.

125.    The subject product sold under various retail labels share common manufacturing defects and deficiencies. Moreover, because of the common design and manufacture of the subject product as sold under various retail labels, including their impotent state and minimal amount of active SAMe, all subject product as sold under various retail labels are similarly mislabeled and deceptively advertised.

126.    Plaintiff and putative class members hereby demand that Defendant manufacturers and retailers pay the expenses associated with the purchase and shipping of the subject product which were borne by consumers, including Plaintiff and putative class members.

127.    As a direct and proximate result of Defendant manufacturers' and retailers' breach of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and putative Class members have suffered damages in an amount to be proven at trial.

128.    The amount in controversy for Plaintiff and each putative Class members' individual claims meets or exceeds the sum of $25. The total amount in controversy of this action in sum exceeds $50,000, exclusive of interest and costs, computed on the basis of all claims to be determined in this lawsuit.

129.   Plaintiff and putative Class members are entitled to recover damages as a result of Defendant manufacturers' and retailers' breach of warranties. Plaintiff and putative Class members are also entitled to seek costs and expenses, including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## FIFTH CAUSE OF ACTION
### (Intentional Misrepresentation)
### (Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)

130.   Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

131.   Plaintiff asserts this cause of action under Florida law.

132.   Plaintiff and her classes hereby incorporate by reference the allegations contained in paragraphs 1-79 of this complaint as though set forth fully herein.

133.   Defendant manufacturers and retailers intentionally made and/or set forth to a market of consumers false representations regarding the nature of the subject product and the amount of active SAMe contained in the subject product which they knew were not accurate.

134.   Defendant manufacturers and retailers have and continue to know that the misrepresentations printed on the labels of the subject product bottles are false and misleading.

135.   Defendant manufacturers and retailers have and continue to intend that the misrepresentations printed on the labels of the subject product bottles induce consumers, including Plaintiff and putative class members, into relying on the misrepresentations in deciding to purchase the subject product and/or pay a price premium in order to obtain a prescribed or desired amount of active SAMe for dietary supplement and health purposes.

42

136.    Plaintiff and putative class members relied upon the misrepresentations printed on the labels of the subject product bottles in choosing to purchase the subject product.  Because of Plaintiff's and putative class members' reliance on the misrepresentations, Plaintiff and putative class members were thereby caused harm in the form of having paid monies to purchase the subject product which is not of merchantable quality and/or not fit for its intended use, and/or paid a price premium for the amount of active SAMe contained in the subject product bottles.

137.    Plaintiff's and putative class members' reliance on the misrepresentations printed on the labels of the subject product bottles was justified because the represented amount of SAMe per serving was not, and is not, obviously false, as many SAMe dietary supplements sold in the consumer market contain those or similar amounts of SAMe.  Moreover, Plaintiff and class members acted as typical and reasonable consumers under the circumstances in relying upon the assumed accuracy of dietary supplement and vitamin labels in deciding what product to purchase.

138.    Plaintiff and putative class members have, as a result of their reliance on the misrepresentations printed on the labels of the subject product bottles, suffered injury and pecuniary damages as set forth in this complaint, including monies paid for the purchase of the subject product and/or a price premium for the included amount of active SAMe.

### SIXTH CAUSE OF ACTION
**(Negligent Misrepresentation)**
**(Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)**

139.    Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

140.    Plaintiff asserts this cause of action under Florida law.

141.    Plaintiff and her classes hereby incorporate by reference the allegations contained in paragraphs 1-79 of this complaint as though set forth fully herein.

142.    Plaintiff and putative class members, as commercial consumers of the subject product, stood in a "special relationship" with Defendant manufacturers and retailers, the manufacturers, distributors, and/or retail sellers of the subject product, and justifiably relied upon their representations in purchasing and using the subject product. In making the previously noted false and deceptive representations regarding the subject product, Defendant manufacturers and retailers held or appeared to hold unique or special expertise regarding the chemical makeup of the product's SAMe contents and potency. Defendant manufacturers and retailers held themselves out as holding some type of special expertise regarding SAMe supplements, or at least some level of medical or scientific backing for its claims regarding the included SAMe, the amount of SAMe contained therein and its health benefits.

143.    Plaintiff and putative class members also stood in a "special relationship" with Defendant manufacturers and retailers, because they, as manufacturers, distributors, and/or retailers of many types of vitamins and dietary supplements, maintain or should maintain unique knowledge of the ingredient make-up of their products and their proper and safe constitution. Plaintiff and putative class members therefore reasonably placed their trust and confidence in the representations made by Defendant manufacturers and retailers regarding the amount of SAMe in the subject product and its manufacture. Moreover, Defendant manufacturers and retailers, as the manufacturers, distributors, and/or retailers of the subject product, were well aware that the subject product label's representations would cause a reasonable consumer to purchase and rely upon the product for maintaining their recommended dosages of SAMe supplementation; as well as to use the label's representations to evaluate the subject product in comparison to the numerous other SAMe brands and supplements placed for sale on the Amazon.com website and other retail venues.

Defendant manufacturers and retailers therefore owed a duty of care to consumers, including Plaintiff and putative class members, to accurately represent the quality and quantity of their vitamin and dietary supplement products, including the subject product.

144.    In breach of their duty of care, Defendant manufacturers and retailers negligently and/or recklessly made and/or set forth to a market of consumers false, deceptive, and misleading representations regarding the nature of the subject product and the amount of included active SAMe that they should have known was not fair and accurate.

145.    The information supplied in the subject product labels were known by Defendant manufacturers and retailers to be desired by the reasonable consumer for the purpose of selecting for purchase a SAMe supplement of sufficient SAMe and consumer value.

146.    Plaintiff and class members were influenced by the subject product labels' deceptive and misleading representations and caused to select the subject product for purchase over other non-defective and accurately labeled SAMe supplements available for purchase on Amazon.com and in the rest of the market. This selection was to Plaintiff and class members' detriment as the product was falsely labeled, defectively manufactured and packaged, and unfit for purposes of a SAMe supplement.

### SEVENTH CAUSE OF ACTION
**(Injunctive Relief)**
**(Brought on behalf of the Nationwide Class, Florida Subclass, and Azorio Subclass)**

147.    Plaintiff Ginsberg asserts this cause of action on behalf of herself, the nationwide class, the Florida subclass, and the Azorio subclass against Defendants Vitamins Because and CT Health. Plaintiff Ginsberg asserts this cause of action on behalf of herself and the Azorio subclass against Defendant Azorio.

148.    Plaintiff asserts this cause of action and request for injunctive relief under Florida state law, as well as federal law.

149.    Plaintiff repeats each and every allegation contained in paragraphs 1-146 of this complaint of the complaint as if set forth herein.

150.    Defendants' conduct is improper and deceptive and has caused injury to Plaintiff and putative class members. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") alleged herein provides for injunctive and declaratory relief. *See* Fla. Stat. Ann. § 501.21.

151.    The grounds for an injunction prohibiting Defendant manufacturers and retailers from employing any currently used or otherwise false and deceptive subject labels and/or selling the defective subject product are present herein. The grounds for such an injunction also includes the fact that Plaintiff and the putative classes have a likelihood of success on the merits; irreparable harm will be done to future purchasing consumers of the subject product if the injunction is denied; the balance of the equities is in favor of granting the injunction; and Plaintiff and the putative classes have been injured by Defendants' actions and future consumers, including Plaintiff, may continue to be injured absent the requested injunctive relief. Plaintiff has and intends to continue to shop on online, including the Amazon website, and in various pharmacies and outlets that continue to sell the subject product, including for purposes of purchasing SAMe dietary supplements. Plaintiff, in the course of shopping at  such venues which sell the subject product in the present or future, will likely, as a reasonable consumer acting reasonably under the circumstances, be subject to the knowing or unknowing purchase of the defective and false and deceptively labeled subject product sold under one of numerous private labels which do not display on their label or disclose to consumers the identity of their SAMe manufacturer. Even if Plaintiff were to consciously avoid the respective private labels of their past subject product purchases, because of the existence of the numerous private labels selling the subject product in the market, Plaintiff faces a real and immediate threat of recurrent deception and consequent injury in her future purchases of SAMe. Defendants have also refused to act on grounds that apply generally to

46

the classes or have acted in a manner that applies generally to the classes and would continue a practice which is consumer oriented and in violation of the law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, pray for a judgment against Defendants as follows:

A.    For an order certifying the Classes, appointing Plaintiff as a representative of the Classes, and appointing the law firms representing Plaintiff as counsel for the Classes;

B.    For compensatory damages, including actual damages, sustained by Plaintiff and the classes, or, alternatively, statutory damages and civil penalties as prescribed by the relevant statutes;

C.    For compensatory damages and/or restitution or refund of all funds acquired by Defendants from Plaintiff and the classes, and the general public as a result of Defendants' unlawful, unjust, unfair, deceptive and unconscionable practices described herein;

D.    For punitive and all other damages available to the Classes;

E.    For payment of costs of suit herein incurred;

F.    For both pre-and post-judgment interest on any amounts awarded;

G.    For payment of reasonable attorneys' fees and expert fees;

H.    For injunctive relief as set forth herein;

I.    For equitable relief as the Court may deem proper; and

J.    For such other and further relief as the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED:  August 3, 2020.

By:  _/s/ Barbara Perez_
    Tod Aronovitz (FBN 186430)
    Barbara Perez (FBN 989304)
    **ARONOVITZ LAW**
    Town Center One, Suite 2201
    8950 SW 74 Court
    Miami, FL 33156
    Tel: 305-372-2772
    Fax: 305-397-1886
    ta@aronovitzlaw.com
    bp@aronovitzlaw.com

    Jay I. Brody (Admitted *Pro Hac Vice*)
    Gary S. Graifman (Admitted *Pro Hac Vice*)
    **KANTROWITZ, GOLDHAMER &**
    **GRAIFMAN, P.C.**
    747 Chestnut Ridge Road
    Chestnut Ridge, New York 10977
    Tel: 845-356-2570
    ggraifman@kgglaw.com
    jbrody@kgglaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on August 3, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system. I also certify that the foregoing document is being served on all counsel of record on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.


By: */s/ Barbara Perez*

**SERVICE LIST**
**Ginsberg vs. AZORIO, LLC, et al.**
**Case No.:  1:20-cv-22329-CMA**

**Attorneys for PLAINTIFF**:

Tod Aronovitz (FBN 186430)
Barbara Perez (FBN 989304)
**ARONOVITZ LAW**
Town Center One, Suite 2201
8950 SW 74 Court
Miami, FL 33156
Tel: 305-372-2772
Fax: 305-397-1886
ta@aronovitzlaw.com
bp@aronovitzlaw.com

Jay I. Brody (Admitted *Pro Hac Vice*)
Gary S. Graifman (Admitted *Pro Hac Vice*)
**KANTROWITZ, GOLDHAMER &
GRAIFMAN, P.C.**
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Tel: 845-356-2570
ggraifman@kgglaw.com
jbrody@kgglaw.com

**Attorneys for DEFENDANT
AZORIO, LLC:**

Nathan Soowal (FBN 1002633)
**NATHAN SOOWAL, P.A.**
3140 NE 9th Avenue
Pompano Beach, FL 33064
Tel: 954-531-4851
Nathansoowallaw@gmail.com

50